**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**CLAPPER'S MANUFACTURING, INC., Respondent.**

**No. 71-1422.**

United States Court of Appeals, Third Circuit.

Argued Dec. 14, 1971.

Decided March 8, 1972.

**416**

Steven Semler, N.L.R.B., Washington, D. C., for petitioner.

William R. Tait, Jr., McNerny, Page, Vanderlin & Hall, Williamsport, Pa., for respondent.

Before VAN DUSEN and HUNTER, Circuit Judges, and LAYTON, Senior District Judge.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge.

The National Labor Relations Board ("Board") determined that the respondent-employer, Clapper's Manufacturing, Inc., ("Clapper's") had committed unfair labor practices within the meaning of Sections 8(a) (1) and 8(a) (2) of the National Labor Relations Act, ("Act") 29 U.S.C. § 158(a) (1) and (2). The Board now seeks the customary enforcement order.

Clapper's is engaged in the manufacturing of plastic laminated furniture tops in Meyersdale, Pennsylvania. In the early spring of 1968, the United Brotherhood of Carpenters and Joiners ("Union") began what became a heated and protracted campaign to organize the company's employees. Clapper's vigorously sought to counteract this effort. The Union petitioned the Board for an election which was subsequently held on November 22, 1968. The Union was defeated by a vote of 86–57. Objections to the election as well as additional charges of unfair labor practices were filed by the Union and pursuant to the parties' stipulation, the Regional Director of the Board set aside the results and ordered that another election be held on June 20, 1969. Upon losing this second election the Union filed objections and on July 8, 1969, filed charges of additional unfair labor practices. These latter objections were consolidated for hearing with the unfair labor practice cases initiated by the November 1968 and July 1969 charges.

In opposing the instant application for enforcement, Clapper's contends that (1) statements made by company president, Dale Clapper, and his supervisory personnel were not violative of Section 8(a) (1); (2) there was no interference with any "labor organization" as defined by Section 2(5) of the Act; and (3) the case should be remanded for further hearing since the procedure followed by the Trial Examiner in excising portions of certain pretrial affidavits of Board witnesses deprived the company of due process. We find no merit to these contentions.

I

Section 8(a) (1), 29 U.S.C. § 158 prohibits an employer from interfering with, restraining or coercing his employees in the exercise of those rights guaranteed by Section 7 of this Act.[1] After reviewing the Trial Examiner's evaluation of the relevant events and often conflicting testimony of the parties,[2] the Board concluded that Clapper's

1. 29 U.S.C. § 157:

"Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection. . . ."

2. Although company officials denied ever participating in a number of the cited

through the actions of Dale Clapper and various supervisory personnel, violated Section 8(a) (1) on the following occasions:

### 1. Coercive Interrogations

On June 29, 1969—the evening before the second election—Dale Clapper questioned employee Alfred Murray as to "how [he thought] the election is going to go" and how several of his fellow employees planned to vote in the upcoming election. On another occasion—in October of 1968—Clapper entered into a discussion with employee Herman Sines and asked him what he thought "about the union business."

### 2. Threats of Economic Reprisals

In October of 1968, Dale Clapper told employees Herman and Thelma Sines that if the "Union got in, [they] would be the first ones out because Plant #2 would be closed down." On a second occasion that month, supervisor Milton Sines (Thelma's brother-in-law) stated to Mrs. Sines that, if the "Union came in [she] would be out of work altogether because building two would be closed down . . . and that anybody else pushing for the Union would be the first to go when building #2 closed down."

### 3. Company Surveillance

On the day of the second election a company supervisor, Walter Lenhart, engaged employee Patricia Ross in a brief conversation which was concluded by his question as to whether "there was anyone else in the plant that [Mrs. Ross] thought he should talk to" and "how [Mrs. Ross] thought the election is going to go." That afternoon Lenhart approached employee Roger Wahl and indicated that he [Lenhart] intended to question other employees in the various plants as to their feelings about the Union.

### 4. Coercive Speeches

During a question and answer period following a speech to employees in November of 1968, Clapper wished his workers a Merry Christmas and Happy New Year and added that "if the Union got in we would be on strike over the holiday." On a similar occasion in June of 1969, Clapper was quoted as saying that "if the Union came in [we] would be on strike over Christmas and that would be a good time for his inventory." [3]

Clapper's contends however, that even though these incidents might constitute technical illegalities, they are "isolated," "innocuous," and *de minimis* and that, considering the heat of the election campaign, they should not be the basis for anything as serious as a Section 8(a) (1) violation. The company asks this Court to exercise its limited power of review, 29 U.S.C. § 160, Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951), and hold that as a matter of law these statements do not support a cease and desist order.

■ Our inquiry must be whether or not there was a substantial basis for the Board's findings. An affirmative answer will require enforcement of the order. Initially, although the cited incidents of "coercive interrogation" may have occurred during the course of otherwise harmless conversations we nevertheless uphold the Board's finding that these remarks were coercive. The purpose of Dale Clapper's questioning was certainly to elicit information about employees' attitudes toward the Union and given the closeness of the scheduled elections, was beyond the bounds of permissible interrogation. *See* N. L. R. B. v. S. E. Nichols-Dover, Inc., 414 F.2d 561, 563 (3rd Cir. 1969); N. L. R. B. v. Frank C. Varney Co., Inc., 359 F.2d 774, 775 (3rd Cir. 1966); N. L. R. B. v. S. S.

discussions, this Court has often noted that it is the Board's responsibility to resolve issues of credibility. Valley Forge Flag Co. v. N.L.R.B., 364 F.2d 310 (3rd

Cir. 1966); N.L.R.B. v. Wings & Wheels, Inc., 324 F.2d 495, 496 (3rd Cir. 1963).

3. Both of these statements were made before large groups of employees.

**418**

Logan Packing Company, 386 F.2d 562, 564 (4th Cir. 1967).

■ Further, Dale Clapper's remarks to Herman and Thelma Sines were unlawful as constituting implied threats of economic reprisals for union activity, see N. L. R. B. v. Barney's Supercenter, Inc., 296 F.2d 91, 94–95 (3rd Cir. 1961); N. L. R. B. v. Marsh Supermarkets, Inc., 327 F.2d 109, 111 (7th Cir. 1963), cert. denied, 377 U.S. 944, 84 S.Ct. 1351, 12 L.Ed.2d 307 (1964), as were the cited statements conveying the impression of company surveillance of Union activity. *See* N. L. R. B. v. S. E. Nichols-Dover, Inc., *supra.*, 414 F.2d at 563; N. L. R. B. v. Texas Electric Cooperatives, Inc., Treating Division, 398 F.2d 722, 725 (5th Cir. 1968); N. L. R. B. v. S. S. Logan Packing Company, *supra.*, 386 F.2d at 564; General Electric Company, Battery Products, Capacitor Department v. N. L. R. B., 400 F.2d 713, 716 (5th Cir. 1968), cert. denied, 394 U.S. 904, 89 S.Ct. 1012, 22 L.Ed.2d 216 (1968). Finally, the Board reasonably concluded that Dale Clapper's predictions of plant closure were not "carefully phrased on the basis of objective fact," N. L. R. B. v. Gissel Packing Co., 395 U.S. 575, 618, 89 S.Ct. 1918, 1942, 23 L.Ed.2d 547 (1969), but rather were statements carrying implications that he would "take action solely on his own initiative for reasons unrelated to economic necessities and known only to him." *Gissel, supra*, 395 U.S. at 618, 89 S.Ct. at 1942. *See also* Mon River Towing, Inc. v. N. L. R. B., 421 F.2d 1, 11 (3rd Cir. 1969); N. L. R. B. v. Winn-Dixie Stores, Inc., 341 F.2d 750, 752 (6th Cir. 1965), cert. denied, 382 U.S. 830, 86 S. Ct. 69, 15 L.Ed.2d 74 (1965).

We conclude that the evidence taken as a whole provides a substantial basis for the Board's finding of a Section 8(a) (1) violation. Universal Camera Corp. v. N. L. R. B., *supra.*, 340 U.S. at 487–488, 71 S.Ct. 456.

## II

We likewise decline to disturb the Board's finding that Clapper's violated Section 8(a) (2) [4] through the domination and control of its company "Employees' Committee" ("Committee"). The Examiner recommended and the Board ordered that Clapper's withdraw recognition and completely disestablish the Committee as a representative employee organization. We agree.

■ The Committee was inaugurated by Dale Clapper prior to the second election to serve, ostensibly, as an "oral suggestion box" concerning employee problems and grievances. Although his intentions may have been exemplary, the ensuing relationship between the Committee and Clapper's constituted a violation of § 8(a) (2). The record indicates that the Committee had neither semblance of formal structure nor any meaningful independence of the company. In brief, Clapper's completely dominated the Committee's organization and activities. Meetings were held at the company's convenience, on its premises, and never in the absence of management. No dues were ever assessed and Clapper's controlled the composition of the Committee by either promoting, discharging or transferring errant "representatives." [5] Meetings were held on company time and the minutes of those meetings prepared and distributed by the company.

4. 29 U.S.C. § 158(a) (2):
   "It shall be an unfair labor practice for an employer—
   (1) . . .
   (2) to dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it: *Provided*, That subject to rules and regulations made and published by the Board pursuant to section 156

   of this title, an employer shall not be prohibited from permitting employees to confer with him during working hours without loss of time or pay. . . . "

5. The Committee was formed without company employees having any choice as to whether or not they wished the Committee to be their representative vis-a-vis Clapper's.

Clapper's, however, claims that the Committee was not in fact, a "labor organization" within the meaning of § 2 (5) of the Act. We reject this contention. Section 2(5), 29 U.S.C. § 152(5), states that:

"The term 'labor organization' means any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work."

In N. L. R. B. v. Cabot Carbon Co., 360 U.S. 203, 79 S.Ct. 1015, 3 L.Ed.2d 1175 (1959), the Supreme Court held that an "employee committee" which exists for the purpose *"in part at least"* of dealing with an employer is a "labor organization" even if it does not "bargain with the employer in the usual sense of collective bargaining. Cabot Carbon, *supra.*, 360 U.S. at 213, 79 S.Ct. 1015.[6] (emphasis added)

■ Notwithstanding its amorphous quality, the fact remains that the Committee was established in part to discuss employee grievances and problems with management and did actually "deal" with Clapper's in regard to a number of such issues. Our review of the record supports the Board's conclusion that Committee-Management discussions were held concerning, *inter alia*, sanitary conditions, inadequate ventilation, the need for additional equipment, as well as the desirability of additional employee fringe benefits. We find that the Clapper's "Employee Committee" was a labor organization within the meaning of the Act, *see* N. L. R. B. v. Jas. H. Matthews & Co., 156 F.2d 706, 707–708 (3rd Cir. 1946); N. L. R. B. v. Thompson Ramo Wooldridge, Inc., 305 F.2d 807, 810 (7th Cir. 1962), and that there is a substantial basis for the finding of a § 8(a) (2) violation. Universal Camera Corp. v. N. L. R. B., *supra.*, 340 U.S. at 487–488, 71 S.Ct. 456.

### III

Finally, Clapper's contends that it was denied due process by the Trial Examiner's excision of portions of certain pretrial affidavits, pursuant to Board Rule 102.118, before those statements were made available to company counsel for his use in cross examination.[7]

6. In *Cabot Carbon*, the Court stated that "it is therefore as plain as words can express that these Committees existed, at least in part, for the purpose 'of dealing with employers concerning grievances. . . . ' This alone brings these Committees squarely within the statutory definition of 'labor organizations,' " 360 U.S. at 213, 79 S.Ct. at 1022 (emphasis added).

7. When this case was heard by the Trial Examiner, Board Rule 102.118, 33 Fed. Reg. 9819 (July 9, 1968) read in relevant part as follows:

(b) (1) Notwithstanding the prohibitions of paragraph (a) of this section, after a witness called by the general counsel or by the charging party has testified in a hearing upon a complaint under section 10(c) of the act, the trial examiner, shall, upon motion of the respondent, order the production of any statement (as hereinafter defined) of such witness in the possession of the general counsel which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the trial examiner shall order it to be delivered directly to the respondent for his examination and use for the purpose of cross-examination.

(2) If the general counsel claims that any statement ordered to be produced under this section contains matter which does not relate to the subject matter of the testimony of the witness, the trial examiner shall order the general counsel to deliver such statement for the inspection of the trial examiner in camera. Upon such delivery the trial examiner shall excise the portions of such statement which do not relate to the subject matter of the testimony of the witness. With such material excised the trial examiner shall then direct delivery of such statement to the respondent for his use on cross-examination. If, pursuant to such procedure, any portion of such statement is withheld from the respondent and the respondent objects

Upon the conclusion of a Board witness' direct testimony, Rule 102.118 affords a respondent the opportunity to examine prehearing affidavits made by the witness, if matters contained in those affidavits are "relevant" to his direct testimony. The Rule thus provides a limited source of material from which a respondent might gain relevant information for the purpose of cross examining that witness. Pursuant to the Rule, after certain witnesses concluded their direct testimony, Board counsel produced those witnesses' pretrial affidavits in their entirety for company counsel's examination. In regard to six additional pretrial statements, Board counsel requested the Trial Examiner to excise certain paragraphs of each affidavit as irrelevant to the subject matter of the affiant's direct testimony. Over company counsel's objection, the Examiner agreed with Board counsel as to what constituted appropriate excisions. Company counsel's position at the hearing was predicated on the obvious difficulty that, being unaware of the contents of the excised paragraphs, he could not very well argue the "relevancy" of those paragraphs to

the scope of the affiant's direct testimony. Thus, he simply objected to the entire procedure as being "unfair," and a denial of due process and requested that he be allowed to examine the affidavits to determine for himself whether they were "relevant." The Trial Examiner denied this request.

In its brief to this Court, Clapper's raises two interrelated issues:[8] (1) that the Trial Examiner may have erred in his determination of what constitutes "relevancy" to direct testimony; (2) that the Board erred in not making the independent review of the Examiner's excisions clearly required by the Rule, particularly in light of an amendment to that Rule.[9]

■ We have compared the six original affidavits with the direct testimony of each of the affiants. Regarding five of these affidavits, we find that the excisions in no way relate to the subject matter of the witness' direct testimony, and, accordingly, hold that the Trial Examiner was correct in his ruling.

■ In regard to one of the affidavits, a single excised paragraph does, in fact, relate to the affiant's testimony.

to such withholdings, the entire text of such statement shall be preserved by the general counsel, and, in the event the respondent files exceptions with the Board based upon such withholding, shall be made available to the Board for the purpose of determining the correctness of the ruling of the trial examiner. If the general counsel elects not to comply with an order of the trial examiner directing delivery to the respondent of any such statement, or such portion thereof as the trial examiner may direct, the trial examiner shall strike from the record the testimony of the witness.

8. Although company counsel suggested at the hearing that the Rule was perhaps unconstitutional on its face, he no longer pursues this contention. In any event, the Rule, as applicable at the hearing, was essentially identical to the Jencks Act, 18 U.S.C. § 3500 and courts have consistently held that the excision of portions of affidavits in criminal cases *unrelated to a witness' direct testimony* does not violate due process. Scales v.

United States, 367 U.S. 203, 81 S.Ct. 1469, 6 L.Ed.2d 782 (1961); Sells v. United States, 262 F.2d 815, 823 (10th Cir. 1959), cert. denied, 360 U.S. 913, 79 S.Ct. 1298, 3 L.Ed.2d 1262 (1959). *See also* North American Rockwell Corporation v. N.L.R.B., 389 F.2d 866, 873 (10th Cir. 1968).

9. Effective July 6, 1970, while the company's exceptions to the Examiner's recommendations were pending before the Board, the second sentence of Rule 102.-118(b)(2) was amended to read as follows, the amendment consisting of the italicized language:
"... Upon such delivery the trial examiner shall excise the portions of such statement which do not relate to the subject matter of the testimony of the witness *except that he may, in his discretion, decline to excise portions which, although not relating to the subject matter of the testimony of the witness, do relate to other matters raised by the pleadings.*" 35 Fed.Reg. 10658 (July 1, 1970).

After careful review, however, we find no information in this single excised paragraph that would have aided company counsel in any way in his cross examination of that witness, or for that matter, to any issue raised in the pleadings.[10] The subject matter of the excised paragraph was never disputed by Clapper's and merely coroborative of information contained in other affidavits which company counsel had inspected. Although it was error not to have produced this paragraph for company counsel's examination, Clapper's suffered no prejudice from the Examiner's failure to provide the statement. It would be unrealistic to suppose that the Trial Examiner's ultimate result would have differed had this paragraph been made available. The error was in no way substantial and must be considered immaterial in the context of the case. Rosenberg v. United States, 360 U.S. 367, 371, 79 S.Ct. 1231, 3 L.Ed.2d 1304 (1959); *see also* Carlisle Paper Box Company v. N. L. R. B., 398 F.2d 1, 5 (3rd Cir. 1968); Morgan Precision Parts v. N. L. R. B., 444 F.2d 1210, 1215 n. 6 (5th Cir. 1971).

 Finally, Clapper's contends that since the amended Rule was in effect during the pendency of the company's exceptions before the Board, a proper review by the Board—utilizing the provisions of the amended Rule—would have resulted in a possible order for production of the excised paragraphs. Clapper's contends that the Board did not comply with that Section of the Rule which specifically provides that if a respondent objects to the withholding of any portions of a statement and subsequently files exceptions, the original affidavits "shall be made available to the Board for the purpose of determining the correctness of the ruling of the trial examiner." [11] It would seem that the Board did not, in fact, consider the company's exceptions, apparently upon the erroneous reasoning that if the company did not specifically request a review of the affidavits, the right was lost. Although it appears that the Board did not make the necessary independent examination of the affidavits, any failure of the Board to follow its own Rule was again certainly harmless, in light of our conclusion that the excised material would not have been helpful in any manner.[12] Rosenberg v. United States, *supra*, 360 U.S. at 371, 79 S.Ct. 1231; Morgan Precision Parts, *supra*, 444 F.2d at 1215 n. 6; Kerner v. Celebrezze, 340 F.2d 736, 739–740 (2nd Cir. 1965), cert. denied, 382 U.S. 861, 86 S.Ct. 121, 15 L.Ed.2d 99 (1965).

The order of the Board will be enforced.

10. See note 9, *supra*.

11. See note 7, *supra*.

12. This conclusion applies as well to the material properly excised by the Trial Examiner pursuant to the Rule as applicable at the hearing.