**UNITED STATES STEEL CORPORA-TION, Employer, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 81–1718.

United States Court of Appeals,
Third Circuit.

Argued March 1, 1982.

Decided June 29, 1982.

S. G. Clark (argued), Washington, D. C., for petitioner.

Victoria Higman (argued), William Wachter, William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B., Washington, D. C., for respondent.

Leonard L. Scheinholtz, John C. Unkovic, James P. Hollihan, Reed, Smith, Shaw &

McClay, Pittsburgh, Pa., amicus curiae for The Chamber of Commerce of the United States of America; Stephen A. Bokat, Nat. Chamber Litigation Center, Washington, D. C., of counsel.

Before, HUNTER, WEIS and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge.

*INTRODUCTION*

This case is before us upon the petition of United States Steel Corporation ("petitioner") for the review of a decision and order of the National Labor Relations Board (the "Board"). The Board determined that petitioner violated section 8(a)(1) of the National Labor Relations Act (the "Act") by photographing employees engaged in a peaceful demonstration.[1] The Board ordered petitioner to cease and desist from such photography, and to destroy all photographs taken.

We believe that the evidence does not support the finding of a section 8(a)(1) violation. Therefore, we will set aside the decision and order of the Board.

*FACTS AND PROCEDURAL BACK-GROUND*

This case is predicated upon a single, independent section 8(a)(1) allegation described in the complaint as follows:

On or about November 14, 1979, the [petitioner] photographed its employees as said employees engaged in protected concerted activity thereby creating the appearance of coercive surveillance for purposes of future reprisals.

Appendix at 245.

The findings of the Administrative Law Judge ("ALJ") may be summarized as follows: Petitioner operates a steel manufacturing facility, known as the South Works, in Chicago, Illinois. The employees of the plant are represented by Local 65 of the United Steel Workers of America (the "Union"). Prior to the events at issue here, female employees at the South Works plant manifested their concern for the adequacy of locker room facilities made available for their use. In consequence, grievances were filed which, as of November 1979, had been heard at the third step of the established contractual dispute settlement procedures. In support of these grievances, on November 14, 1979 a demonstration was held at a plant entrance under the sponsorship of the Women's Committee of the Union.

Approximately fifty to seventy-five employees participated in the two-hour demonstration. The record shows that the participants, many of whom carried picket signs, were good humored and peaceable, and the rally encompassed neither violence nor other illegal activities.[2] No employee was disciplined as a result of the demonstration, and no legal action was taken by petitioner.

Petitioner assigned two photographers, each with a camera, to record the demonstration. The photographers were given no guidelines or limitations in their task. Roughly 140 pictures were taken, including some close-up photographs of employees, and the picture-taking encompassed preparations for the demonstration as well as the

---

1.  Section 8(a)(1), 29 U.S.C. § 158(a)(1) (1976), provides:

    (a) It shall be an unfair labor practice for an employer—
    (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title [i.e., section 7 of the Act] . . . .

2.  Both the ALJ and the Board concluded that the demonstration constituted concerted activity protected under section 7 of the Act. Appendix at 249, 258. In its reply brief, petitioner apparently disputes this conclusion for the first time. *See* Reply Brief of Petitioner at 4–5; Supplemental Brief of the NLRB at 1. We need not resolve this dispute in reaching our decision.

demonstration itself. The pictures were retained, although never used, by petitioner. Petitioner's photographic practice was undertaken on the advice of counsel, and had been implemented without challenge for each of thirteen previous demonstrations held at the plant during the preceding eight years.

Based on his interpretation of the relevant law, the ALJ concluded that, unless petitioner provided a legitimate justification, its picture-taking constituted a violation of section 8(a)(1). Petitioner justified its action as anticipatory evidence-gathering for possible use in legal proceedings; however, petitioner admitted it had no reason to believe that unprotected activity would occur at the event. The ALJ concluded that petitioner's defense was "technically deficient,"[3] and he therefore found that section 8(a)(1) was violated.

Nevertheless, the ALJ concluded that no remedial order was warranted. The ALJ noted that photography was prohibited by the Board because of its coercive implication of future reprisals.[4] The ALJ listed several factual findings which "negate the assumption that employees herein were gripped by any deep concern" regarding future reprisals. Appendix at 247. These findings include: a) absence of any evidence of anti-union animus; b) affirmative evidence of the protection of employees since 1942 by a bargaining representative with an amicable relationship to management; c) absence of potential for "hard feeling" such as is present in disputes arising from organization or contract negotiation; d) absence of allegations of independent employer misconduct; e) absence of evidence of economic dependence; and f) evidence that demonstrators affirmatively sought and obtained media coverage of the event.[5] In sum, the ALJ concluded that

the violation was isolated, occurred in a context of a long bargaining history, involved an Employer which long ago had accepted principles of industrial democracy and finally focused upon employees who welcomed personal exposure of their activity through recordation from other sources.

Appendix at 249. Thus, although finding a technical violation of section 8(a)(1), the ALJ dismissed the complaint in its entirety. Appendix at 250.

On review, the Board adopted the ALJ's conclusion that petitioner's conduct violated section 8(a)(1), noting that

an employer's photographing of its employees while they are engaged in protected concerted activity constitutes unlawful surveillance.

Appendix at 254–55.[6] The Board also agreed that petitioner did not offer a legitimate justification for its conduct.

The Board disagreed with the ALJ's conclusion that no remedial order was warranted. The Board concluded that a) petitioner's longstanding photographing practice showed that its conduct in this case was not "isolated;" b) amicable relations and the absence of anti-union animus are irrelevant to the question "whether [petitioner's] conduct in photographing employees reasonably tended to interfere with employee rights;"[7] and c) employee publicity efforts do not alter the coercive nature of employer surveillance. Thus, the Board concluded that petitioner's conduct, since it "tended to interfere with, restrain, and coerce employees in the exercise of the rights guaranteed them,"[8] warranted the issuance of a remedial order.

3. Appendix at 248.

4. Appendix at 247.

5. Appendix at 247–48.

6. In reaching this conclusion, the Board, without discussion, relied on three of its own prior decisions. Appendix at 254–55.

7. Appendix at 257.

8. Appendix at 258.

*DISCUSSION*

The question before us is whether there is substantial evidence on the record as a whole, including any evidence detracting from the Board's view, to support the Board's finding of a violation of section 8(a)(1). *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1951); *NLRB v. Craw*, 565 F.2d 1267, 1270 (3d Cir. 1977).

█ Before reaching the question whether petitioner had a legitimate justification for its photographing, the Board and the ALJ first concluded that the photographing constituted unlawful surveillance in violation of section 8(a)(1). In making this initial determination, both the ALJ and the Board assumed that, without regard to the particular facts of the case, photographing of protected activity constitutes a *per se* violation of section 8(a)(1). We cannot agree.[9] In *NLRB v. Armcor Industries, Inc.*, 535 F.2d 239 (3d Cir. 1976), this court enunciated the standard applicable in a section 8(a)(1) case:

> To establish a violation of Section 8(a)(1), it need only be shown that "*under the circumstances existing*, [the employer's conduct] may reasonably tend to coerce or intimidate employees in the exercise of rights protected under the Act."

535 F.2d at 242, *quoting Local 542, International Union of Operating Engineers v. NLRB*, 328 F.2d 850, 852–53 (3d Cir.), *cert. denied*, 379 U.S. 826, 85 S.Ct. 52, 13 L.Ed.2d 35 (1964) (emphasis added).[10] The *Armcor* court clearly recognized the need for case by case decision-making when examining alleged section 8(a)(1) violations.

█ As the Board implicitly assumed, it is not essential to a finding of a section 8(a)(1) violation that the employer's conduct actually "interfere with, restrain, or coerce employees" in the exercise of protected

rights. *See, e.g., Armcor*, 535 F.2d at 242. Rather, it is sufficient, as the Board stated, that the employer's conduct "may reasonably tend to coerce or intimidate" employees in the exercise of these rights. *Id.*; Appendix at 257. The Board failed to recognize, however, that it is a reasonable tendency *under the circumstances* which governs the inquiry in each case. Consequently, the Board did not examine the factual setting of this case in reaching its conclusion that petitioner's surveillance was unlawful.

In *NLRB v. Computed Time Corp.*, 587 F.2d 790 (5th Cir. 1979), the Fifth Circuit confronted a case which presented a history similar to that in the instant case. In *Computed Time*, the Board had affirmed the ALJ's finding that the presence of management representatives at union functions has "an *inherent* tendency to impede employees in the exercise of their self-organization rights." 587 F.2d at 794 (emphasis added). Accordingly, the Board ruled that such activity violates section 8(a)(1).

█ The Fifth Circuit rejected the Board's *per se* doctrine. Surveillance by itself, the court held, does not violate the Act. Rather, "[i]n order for an employer to violate Section 8(a)(1) by illegal surveillance . . . he must 'interfere with, restrain, [or] coerce' employees in the exercise of their Section 7 rights." 587 F.2d at 794, *quoting NLRB v. Atkins Saw Division of Nicholson File Co.*, 399 F.2d 907, 910 (5th Cir. 1968). The court noted that surveillance violates the Act "because it indicates an employer's opposition to unionization" and leads employees to think they are "under the threat of economic coercion, retaliation, etc." 587 F.2d at 794, *quoting Hendrix Mfg. Co. v. NLRB*, 321 F.2d 100, 104–05 n.7 (5th Cir. 1963). *See Hedstrom Co. v. NLRB, (Hedstrom I)*, 558 F.2d 1137, 1144 n.18 (3d Cir.

---

**9.** Because we conclude that petitioner's surveillance was not unlawful, we need not decide whether anticipatory evidence-gathering is a legitimate justification for petitioner's activity.

**10.** The "under the circumstances" standard has been consistently applied by this court in section 8(a)(1) cases. *See, e.g., NLRB v. K & K*

*Gourmet Meats, Inc.*, 640 F.2d 460 (3d Cir. 1981); *Hedstrom Co. v. NLRB, (Hedstrom II)*, 629 F.2d 305 (3d Cir. 1980), *cert. denied*, 450 U.S. 996, 101 S.Ct. 1699, 68 L.Ed.2d 196 (1981); *NLRB v. Garry Mfg. Co.*, 630 F.2d 934 (3d Cir. 1980).

1977) ("Surveillance which suggests coercion, or which inhibits the exercise of § 7 rights, violates § 8(a)(1)."). Turning to the record before it, the court in *Computed Time* found no evidence of any interference, coercion, or restraint. Under the circumstances of the case,[11] a section 8(a)(1) violation was not shown. 587 F.2d at 794–95.

The *Computed Time* approach, examining surveillance in light of the circumstances of the case, was employed by federal appellate courts in many of the surveillance cases cited by the parties,[12] the ALJ and the Board.[13] Although the courts in the remaining cases did not *expressly* connect the violation to the facts, *every* Board and federal appellate decision cited in which unlawful surveillance was found involved one or more of the following factors: a) an organizational or election campaign; b) evidence of anti-union animus; c) refusal to bargain; d) a strike; or e) independent unfair labor practices.[14] In our view, the failure of these decisions explicitly to acknowledge the link between circumstances and violative conduct does not justify the adoption of a *per se* rule which ignores these circumstances.

The Board, in enunciating the *per se* rule in this case,[15] relied on three of its own

decisions which found unlawful surveillance without *expressly* linking this finding to the circumstances. Nevertheless, each case presents facts which may be starkly contrasted to the peaceful relations in the instant case. *Glomac Plastics, Inc.*, 234 NLRB 1309 (1978) (Anti-union animus; bad-faith bargaining; pictures taken during strike); *Larand Leisurelies, Inc.*, 213 NLRB 197 (1974) (Pictures taken during unfair labor practice strike); *Flambeau Plastics Corp.*, 167 NLRB 735 (1967) (History of bad-faith bargaining; anti-union animus; pictures taken during strike).

Although the circumstances in this case were not discussed by the ALJ or the Board in relation to their finding of unlawful surveillance, the ALJ extensively discussed the circumstances of this case in reaching his conclusion that no remedial order was warranted. Appendix at 247–49. Indeed, a fair reading of the record shows that the ALJ essentially concluded that, under the circumstances, the petitioner's conduct did *not* reasonably tend to interfere with, restrain, or coerce the employees in the exercise of their protected rights. While ultimately dismissing the complaint, the ALJ, erroneously applying a *per se* doctrine,

---

**11.** It is to be noted that, in *Computed Time*, an organizational effort was under way, and an independent unfair labor practice was committed. 587 F.2d at 793. Arguably, the atmosphere in the instant case would be even less likely to support a finding of interference, coercion, or restraint.

**12.** These cases include those cited to us by the *amicus curiae*, the United States Chamber of Commerce.

**13.** *NLRB v. Intertherm, Inc.*, 596 F.2d 267 (8th Cir. 1979); *NLRB v. Computed Time Corp.*, 587 F.2d 790 (5th Cir. 1979); *NLRB v. Colonial Haven Nursing Home, Inc.*, 542 F.2d 691 (7th Cir. 1976); *NLRB v. Mueller Brass Co.*, 509 F.2d 704 (5th Cir. 1975); *NLRB v. Associated Naval Architects, Inc.*, 355 F.2d 788 (4th Cir. 1966); *Hendrix Mfg. Co. v. NLRB*, 321 F.2d 100 (5th Cir. 1963). *See also NLRB v. Gary Aircraft Corp.*, 468 F.2d 562 (5th Cir. 1972) (per curiam).

Several Board decisions cited to us have also found, based on the circumstances of the case, that surveillance did not violate the Act. *See, e.g., Berton Kirshner, Inc.*, 209 NLRB 1081

(1974); *Hilton Mobile Homes*, 155 NLRB 873 (1965).

**14.** *See, e.g., Kallmann v. NLRB*, 640 F.2d 1094 (9th Cir. 1981) (anti-union animus); *NLRB v. Craw*, 565 F.2d 1267 (3d Cir. 1977) (organizational campaign; strike; independent unfair labor practices); *Hedstrom Co. v. NLRB, (Hedstrom I)*, 558 F.2d 1137 (3d Cir. 1977) (organizing campaign; numerous independent unfair labor practices); *NLRB v. Clapper's Mfg., Inc.*, 458 F.2d 414 (3d Cir. 1972) (heated, protracted organizing campaign); *NLRB v. Frick Co.*, 397 F.2d 956 (3d Cir. 1968) (strike; independent unfair labor practices); *Local 19 Hotel Employees Union*, 240 NLRB 240 (1979) (strike); *Russell Sportswear Corp.*, 197 NLRB 1116 (1972) (organizing campaign; strike); *Holly Farms Poultry Industries, Inc.*, 186 NLRB 210 (1970) (organizing campaign); *Gopher Aviation, Inc.*, 160 NLRB 1698 (1966) (refusal to bargain); *General Engineering, Inc.*, 131 NLRB 901 (1961) (anti-union animus; past unfair labor practices).

**15.** Appendix at 254–55.

found a technical violation of section 8(a)(1).

With one exception, the Board on review did not disturb the ALJ's factual findings.[16] The record shows that amicable relations existed between petitioner and the Union; that employees were not economically dependent upon petitioner; that no independent unfair labor practice was committed by petitioner; and that the dispute did not harbor the potential for labor unrest as is present in disputes arising from organization or contract negotiation. Furthermore, the record shows that the demonstrators were good humored and the event peaceful; moreover, the participants did not shun identification.[17] Finally, the record shows that petitioner engaged in the same practice during thirteen demonstrations over an eight-year period; there was no allegation that petitioner committed any unfair labor practice, such as a reprisal, arising from these occasions. We hold that, under these circumstances, petitioner's conduct did not reasonably tend to interfere with, restrain, or coerce employees in the exercise of their section 7 rights.

Therefore, the decision and order of the Board will be set aside.

A. LEON HIGGINBOTHAM, Jr., Circuit Judge, dissenting.

I respectfully dissent.

I set forth the Board's holding on the merits, because I think it is sound:

In adopting the Administrative Law Judge's conclusion that Respondent's conduct violated Section 8(a)(1) of the Act, we note that it is well established that, absent legitimate justification, an employer's photographing of its employees while they are engaged in protected concerted activity constitutes unlawful surveillance. See, e.g., *Glomac Plastics, Inc.,* 234 NLRB 1309, 1320 (1978); *Larand Leisurelies, Inc.,* 213 NLRB 197, 207 (1974); *Flambeau Plastics Corporation,* 167 NLRB 735, 743 (1967). We further find that Respondent has failed to establish any legitimate justification for its actions. In this regard, Respondent's superintendent, Studohar, who directed that arrangements be made for photographing the demonstration, testified that he did so for the purpose of securing evidence for possible litigation. However, he also admitted that he had no reason to anticipate that the participants in the demonstration would engage in violent or other illegal conduct. Furthermore, as noted above, the employees in fact did not engage in such conduct and Respondent did not institute any legal action as a result of the demonstration. In similar circumstances, the Board consistently has rejected the defense raised by Respondent here. Thus, it is well settled that "purely 'anticipatory' photographing of peaceful picketing in the event something 'might' happen does not justify [an employer's] conduct when balanced against the tendency of that con-

---

**16.** The Board *did* dispute the ALJ's finding that petitioner's conduct was isolated. Appendix at 256. The Board noted that petitioner had photographically recorded thirteen demonstrations over an eight-year period. (We note that no grievance was ever filed in regard to this practice. Petitioner's Brief at 7.) In any event, we conclude that the frequency of petitioner's conduct does not alter our analysis in this case.

**17.** Indeed, the employees and the Union actively sought publicity of the demonstration. Through the efforts of a publicity committee formed for this purpose, the public and the media were given advance notice of the demonstration. *As a result of these efforts,* 1) a local newspaper publicized the demonstration nine days beforehand; 2) a Chicago area television station broadcast a film of the demonstration within one hour after it ended; 3) photographers from two Chicago area newspapers photographed the demonstrators; and 4) the newspaper of Local 65, which represents the employees involved, carried on the front page of its December 1979 issue photographs depicting identifiable demonstrators at the event, with an accompanying description. Appendix at 36–42; Petitioner's Brief at 4–5.

The Board argues that picture-taking by third parties does not justify picture-taking by the employer, since the latter has the exclusive power to discipline. Appendix at 257–58. We need not confront this issue. We simply note that the seeking of publicity may be a relevant factor in determining whether, under the circumstances, employees feared future reprisals.

duct to interfere with the employees' right to engage in concerted activity." *Glomac Plastics, Inc., supra.* We, therefore, find Respondent's conduct violative of Section 8(a)(1).

255 N.L.R.B. No. 164, at 2–4 (May 7, 1981) (footnotes omitted).

Judge Hunter's thoughtful opinion for the majority accurately characterizes the Board's action. The Board did *not* examine the circumstances of *this* case when it concluded that the company's conduct tended to coerce the employees. Rather, the Board invoked a presumption that such photographing tends to coerce, and it placed the burden on the company to justify its conduct.

Were we writing on a clean slate, I might agree that a close examination of whether coercion *in fact* occurred should be required in every case. We are obviously obliged, however, to follow Supreme Court precedent, and at least one case specifically authorizes the procedures employed by the Board. In *Republic Aviation Corp. v. NLRB*, 324 U.S. 793, 65 S.Ct. 982, 89, 1372 (1945) the Court held that the Board may, by decisional rule, create a presumption that a particular *class* of conduct is coercive under § 8(a)(1). Once the general counsel shows that such presumptively coercive conduct has occurred, the employer may avoid liability only by showing that, under the circumstances, its conduct was justifiable.

In *Republic Aviation* the Board had invoked a presumption that a no solicitation rule which precluded union solicitation on the employer's premises during non-working periods was invalid in the absence of special justification. The Court perceived "no error in the Board's adoption of this presumption," 324 U.S. at 804, 65 S.Ct. at 988, and specifically approved placing the burden on the employer to show that the presumptively coercive restrictions were justified by "special circumstances." 324 U.S. at 803–4, n.10, 65 S.Ct. at 987–88, n.10.[1]

I need not discuss at any length the deference that we are obliged to afford the Board in its interpretation and effectuation of the National Labor Relations Act. In my view, it is reasonable to presume as the Board did that purely "anticipatory" photographing of concerted activities tends to coerce as that term is used in the Act.

Certainly, some picture-taking is, at times, justified. Because litigation is so often a possibility in situations such as these, and because photographs are often the most useful records of what transpired, the company should be able to defend its conduct if it can show that it reasonably believed at the time it took the pictures that some form of unlawful conduct was occurring.[2]

However, I agree with the Board that the company failed to establish a justification for the taking of pictures in these circumstances. It is clear in this case that United States Steel had no reason to believe that any unlawful conduct was occurring. I therefore think it was proper for the Board to conclude that the company's conduct was an unfair labor practice under § 8(a)(1). I would affirm the Board's order.

---

1. Interestingly, the employers in *Republic Aviation* argued that an unfair labor practice finding must be supported by "evidence before the Board to show that the rules and orders of the employers interfered with and discouraged union organization in the circumstances and situation of each company." 324 U.S. at 798, 65 S.Ct. at 985. The Court specifically rejected such an approach, and upheld instead the Board's presumption, a course which the majority in this case, by adopting an "existing circumstances" test, has chosen not to follow.

2. The Seventh Circuit has upheld the Board's right to place the burden on the employer to justify its actions in such situations:

> We conclude that the Board may properly require a company to provide a solid justification for its resort to anticipatory photographing.

*NLRB v. Colonial Haven Nursing Home,* [MO 542 F.2d 691, 701 (7th Cir. 1976)].