PIONEER FINISHING CORPORATION,
Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent,

and

Kenneth Pacheco, Richard M. Drolet, and
John Moniz, Intervenors.

No. 81–1038.

United States Court of Appeals,
First Circuit.

Argued Sept. 11, 1981.

Decided Nov. 23, 1981.

Harold N. Mack, Boston, Mass., with whom Morgan, Brown, Kears & Joy, Boston, Mass., was on brief, for petitioner.

Helen L. Morgan, Washington, D.C., with whom William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, and W. Christian Schumann, Washington, D.C., was on brief, for respondent.

Emily J. Novick, with whom Dan Kesselbrenner, Legal Asst., and Doyle, Playter, Novick & Berkin, Boston, Mass., was on brief, for intervenors.

Before COFFIN, Chief Judge, ALDRICH and BREYER, Circuit Judges.

COFFIN, Chief Judge.

Pioneer Finishing Corporation seeks review of an order issued by the National Labor Relations Board requiring it to reinstate three employees in the same or similar jobs from which they had been discharged, and the Board seeks enforcement of its order. After reviewing questions of law, and after finding that there is substantial evidence on the record to support the Board's conclusion that the discharge of two employees violated § 8(a)(1) of the National Labor Relations Act and the discharge of one violated §§ 8(a)(1) and 8(a)(3), we hold that the Board's order should be enforced.

Pioneer Finishing operates a factory in Fall River, Massachusetts, in which approximately 140 employees dye and finish textile products. The employees, unionized for a number of years, had negotiated a new collective bargaining agreement late in 1977. Although the wage provisions went into effect immediately, other provisions were deferred until the Company prepared a final copy of the agreement for signing.

Among the topics of negotiation was the question whether formation of a health and safety committee should be required by the agreement. Believing that the negotiators had agreed upon formation of such a committee, Union Shop Chairman Kenneth Pacheco was distressed to find that the final draft prepared by the Company in the spring of 1978 omitted reference to the committee. The Company took the position that the committee was to be implemented on a trial basis but not included in the contract. It is not clear whether, at that point, the contract had been signed or whether further negotiation was possible. Believing the issue still to be negotiable, Pacheco got the Union to schedule a meeting of employees to discuss the omission of the clause from the contract. He helped prepare a leaflet discussing working conditions at the plant and the status of the

health and safety clause, and recommending that employees act by taking note of safety issues and by attending the Union meeting. He signed the leaflet as Shop Chairman and distributed the leaflet on the Company premises during his off-hours on May 2.

The leaflet stated in part that:

"Pioneer Finishing is a dangerous place to work . . . . In 1977 alone, there were 28 serious accidents resulting in 2,248 hours of lost time and wages! Which of us will be victims of these crippling accidents in 1978? How many of us risk accidents daily because of holes in the floor, falling lights, defective trucks and machinery, etc.? Only an effective Health & Safety Committee can ensure a safer future for us all . . . .

"The company wants the Health & Safety clause stricken from the contract . . . . The reason the company wants this is clear. After all, an effective Health & Safety Committee forcing the company to fix the hazards affecting you and I is bound to cost them money . . . ."

On May 5, three days after Pacheco distributed the leaflet, he was suspended by Thomas Melucci, President of the Company. In a letter to the Union explaining the reasons for the discharge, Melucci assumed that the contract was in effect. He wrote that Pacheco had violated the contract because he did not have permission to distribute the leaflet and should instead have posted it on the bulletin board provided under the contract for official notices.[1] Melucci also stated that the leaflet disrupted the "harmonious relationship" between the Company and the Union guaranteed by the agreement because it contained false and inflammatory statements. Specifically the Company claimed that not all 28 accidents were either "serious" or "crippling", that there were no grounds for stating that the Company was not respecting the agreement reached during negotiation and that it was reneging because it did not wish to spend the money that would be required. Approximately a week later, Pacheco was discharged. [Matter not pertinent to printed opinion deleted.]

The issue of Pacheco's discharge was submitted to a single arbitrator by agreement of Pacheco, the Union, and the Company. After a hearing, the arbitrator concluded that the Company was justified in discharging Pacheco. In reaching this conclusion, he found that Pacheco had entered the Company's premises and circulated the leaflets without permission in violation of the contract, that Pacheco's activity was not protected by virtue of his status as Shop Chairman, that the content of the leaflet grossly exaggerated safety conditions at the plant, and that it violated the contract by destroying the "harmonious relationship" between the Union and the Company. Pacheco protested this decision by filing a charge against the Company, claiming that his discharge violated §§ 8(a)(1) and 8(a)(3) of the Act. The administrative law judge (ALJ), after determining that he did not need to defer to the arbitrator's decision, found that the Company was not justified in discharging Pacheco because his activities were protected by the Act. The Board upheld that conclusion. [Matter not pertinent to printed opinion deleted.]

*Deference to the Arbitrator*

Although the Board is not required by statute to defer to the decision reached by an arbitrator, it has established a policy of

1. The two relevant clauses in the collective bargaining agreement state that:
 "*Bulletin Boards*: The Employer agrees to provide space on its bulletin board for the posting of official notices relating to Union meetings and other Union affairs."
 "*Access to Premises*: A representative or representatives of the Union shall have access to the plants of the Employer for the purpose of adjusting grievances, negotiating the settlement of disputes, investigating working conditions and generally for the purpose of carrying into effect the provisions and aims of this agreement. He shall make an appointment in advance of such visits. In any event, the representative of the Union shall on arrival at the plant clear through the regular channels of the Employer for receiving visitors and may be accompanied by a representative of the Employer on any visit into the plant."

deference to encourage the voluntary settlement of labor disputes. *Spielberg Manufacturing Company*, 112 N.L.R.B. 1080, 1082 (1955). Recognizing, however, that it also has the statutory responsibility to remedy unfair labor practices, it has defined criteria to determine when deference is appropriate: the arbitration proceedings must appear to have been fair and regular, all parties must have agreed to be bound, and the decision cannot be clearly repugnant to the purposes and policies of the Act. *Id.* In addition, the arbitrator must have considered the unfair labor practice issue. *Suburban Motor Freight, Inc.*, 247 N.L.R.B. No. 2 (Jan. 8, 1980); *Raytheon Company*, 140 N.L.R.B. 883, 884 (1963), *enf. denied on other grounds*, 326 F.2d 471 (1st Cir. 1964).

In choosing not to defer, the ALJ wrote that

"The [arbitrator's] decision does refer to the concept of 'protected activity', but the arbitrator defines that term in a sense totally at odds with the statute, and his statement of the issue presented indicates that he felt confined solely to the contractual questions: 'The issue before me was *not* whether certain employees thought unsafe conditions existed, but whether Pacheco exceeded the Contract in doing what he did' [emphasis in original] .... The arbitrator nowhere conveys an awareness of the statutory principles implicated by [the issue of Pacheco's right to engage in concerted activity], and his decision, in my view, abridges those principles."

Although not expressly so stating, the ALJ was in effect concluding that deference was not appropriate because the arbitrator had not considered the statutory issues and because the result was not consistent with the Act.

 In reviewing the correctness of this conclusion, we look to whether the ALJ abused his discretion in deciding that the factors calling for deference were not present. *Liquor Salesmen's Union Local 2 v. NLRB*, 664 F.2d 318 at 326 & n.3 (2d Cir. 1981); *Ad Art, Inc. v. NLRB*, 645 F.2d 669, 674 (9th Cir. 1981); *NLRB v. Pincus Bros.,*

*Inc.,—Maxwell*, 620 F.2d 367, 372 (3d Cir. 1980). We find that there was no abuse of discretion primarily because the arbitrator did not adequately address the statutory issue.

The arbitrator's opinion clearly evidences that he was solely concerned with whether Pacheco had violated the contract by distributing the leaflets. Although he initially stated that the question was whether Pacheco was engaged in "protected activity", to determine if the activity was protected, he looked to whether the activity violated the contract. He found as violations Pacheco's unauthorized entry into the premises and the distribution of untruths that attempted to destroy the "harmonious relationship" protected by the contract.

There are occasions when consideration of the contractual issues may determine the statutory issues, and therefore allows the Board to find that the arbitrator necessarily and clearly, though not explicitly, considered the statutory issue. This occurs when the statutory and contractual issues are congruent because they rest upon the same factual determinations. *See, e.g., Liquor Salesmen's Union Local 2 v. NLRB, supra*, at 325; *Ad Art, Inc. v. NLRB, supra*, 645 F.2d at 677; *Bloom v. NLRB*, 603 F.2d 1015, 1021 (D.C.Cir.1979); *Bay Shipbuilding Corp.*, 251 N.L.R.B. No. 114 (Aug. 27, 1980).

In the case at bar, the finding that the contract was violated, even if taken as correct, does not of necessity determine that Pacheco had no protection under the statute. To so determine, the arbitrator would have had to consider the separate, statutory issues: whether the content of the leaflet was protected under the statute and whether the contract waived statutory rights to enter and to distribute the leaflet. These issues require individualized analysis and hence prevent deference where, as here, there is no indication that this analysis has been performed.

It is not enough that the parties raised the statutory issues before the arbitrator and that one might decide that he considered those issues by virtue of the fact that he chose instead to rest his decision on

contractual grounds. Where the arbitrator has no duty to consider the statutory issues, it would undermine the purpose of the Act to require the Board to defer merely on the speculation that he must have considered an employee's rights under the statute. *See Stephenson v. NLRB*, 550 F.2d 535, 540 (9th Cir. 1977). Moreover, it is quite clear that the arbitrator's decision did not reflect, directly or indirectly, consideration of any factors germane to the statutory issue. Although deference may advance the policies of the statute by encouraging voluntary settlement, in this instance the Board did not abuse its discretion by deciding not to defer to the arbitrator's award.

Because we find that one of the deferral criteria was not met, we do not need also to review the ALJ's conclusion that the result was contrary to the purpose and policies of the Act. *Compare NLRB v. Max Factor and Co.*, 640 F.2d 197, 203 n.6 (9th Cir. 1980). Such a judgment, however, is implicit in our discussion below on the question whether substantial evidence supports the Board's finding that Pacheco's activities were protected under the Act.

*Pacheco's Discharge*

Having correctly decided that deference was not appropriate, the Board concluded that Pacheco's activities were protected under the statute and therefore could not be used as reason for his suspension and subsequent discharge. In so finding, the Board had to determine that the substance of the leaflet warranted protection under the Act, and that Pacheco had a protected right to be on the premises and to distribute leaflets. We review these findings to the extent of considering whether the Board applied the law properly and whether substantial evidence on the record as a whole supports its findings.

■ Examining first whether the message conveyed by Pacheco's activities was protected, we find ample evidence to support the Board. The leaflet dealt directly with an important condition of employment, the health and safety measures to be taken to protect employees. This is a topic of discussion falling clearly within the core of concerns protected by the Act. The action urged by the leaflet—inclusion of a health and safety clause in the contract—does not affect the status of this protection. Although the Company reasons that this call to reopen negotiations after a contract had been signed violated the contract and the Act by disrupting harmonious relations, substantial evidence exists to support the Board's finding that there was reason to question whether the contract had been signed by all parties at the time of Pacheco's activities. As a result, there may have been no contract to violate, and the courses of action suggested in the leaflet would not have eroded the respect for a finalized collective bargaining agreement required by the Act.

■ Lastly, the particular wording of the leaflet does not remove Pacheco's activities from the sphere of protection afforded by the statute. Although the language in the leaflet may have been inflammatory, the Act protects expression that may not be totally accurate. Inaccurate or misleading statements lose their protection only if they are "deliberately or maliciously false". *El Mundo Broadcasting Corp.*, 108 N.L.R.B. 1270, 1278–79 (1954). The Supreme Court has recognized that "rhetorical hyperbole" is common in labor disputes and must be protected, *Dominion Branch No. 496, National Ass'n of Letter Carriers v. Austin*, 418 U.S. 264, 286, 94 S.Ct. 2770, 2782, 41 L.Ed.2d 745 (1974), and that the "vigorous exercise of [section 7 rights] must not be stifled by the threat of liability for the over-enthusiastic use of rhetoric". *Id.* at 277, 94 S.Ct. at 2778.

While the portrayal of the 28 injuries as serious or crippling was not accurate, we agree with the Board's assessment that the leaflet's characterization of the injuries was "rhetorical hyperbole" not to be construed as fact by fellow employees. There is no evidence that any misstatements of fact were made maliciously or without some foundation in fact. *See El Mundo Broadcasting Corp., supra*, 108 N.L.R.B. at 1280. We also agree with the Board that the assertion that the company wished to save

money is an argument typical to labor disputes, to be interpreted in such a light. Lastly, the Board had reason to conclude that Pacheco was not intentionally maligning the Company when he wrote that he did not think that it would live up to the agreement to include the health and safety clause in the contract. Pacheco genuinely believed that the Company had agreed to the clause during negotiations and that its failure to include the clause was the result of bad faith, not the Company's good faith understanding that the clause was not to be included.

There remains the question whether the manner in which Pacheco distributed the leaflets removed him from the protection of the Act. He entered the premises during his off-hours and distributed the leaflets to the employees while they were working.

■ The Board is correct first in concluding that the contract, if in effect, did not waive the statutory right of employees to distribute Union materials. It limited the right of access of Union officials to the premises to the performance of specific duties, which did not include the distribution of literature. It also established the bulletin board as the place in which official notices should be posted. These specific restrictions cannot be interpreted, however, as a waiver of the right of employees to circulate leaflets that deal with the conditions of their employment. *See Ford Motor Co.*, 221 N.L.R.B. 663, 665 (1975) (contractual waiver of employees' rights to distribute union literature would be invalid).

■ Pacheco was in the unusual situation of being both an employee and, as Union Shop Chairman, a Union official. Although we have in the past recognized that a contract may validly restrict the rights that a union official would otherwise enjoy as an employee, *NLRB v. Wilson Freight Co.*, 604 F.2d 712, 726–27 (1st Cir. 1979), *cert. denied*, 445 U.S. 962, 100 S.Ct. 1650, 64 L.Ed.2d 238 (1980), Pacheco's activities here have not been specifically proscribed by the contract. When a union official is also an employee, it cannot be assumed that he had waived rights he would have as an employee unless

he has done so explicitly or unless his activities are destructive to the collective bargaining process to which he is specifically committed as a union official. *Compare id.*

■ The fact that Pacheco was off-duty at the time that he entered the premises does not render his activity unprotected. Whether off-duty access is protected under the Act depends upon the balance between the employees' § 7 rights and the employer's private property rights. *GTE Lenkurt*, 204 N.L.R.B. 921 (1973). Although the Act cannot require access when a company has asserted its property rights by issuing a no-access rule, the balance shifts when the company has not taken a strong stand. In this instance, the Company has no rule preventing access but instead has in fact allowed non-working employees to enter the premises to distribute materials to working employees. Under these circumstances, we uphold the Board's finding that Pacheco's off-duty status did not remove his activity from the protection of the Act.

Finally, the fact that the leaflets were distributed to employees who were working does not justify Pacheco's discharge. Where distribution during working time is not specifically prohibited, distribution is protected as long as it does not interfere with production. *Daylin, Inc.*, 198 N.L.R.B. 281 (1972), *enf'd*, 496 F.2d 484 (6th Cir. 1974). There is no evidence that production was substantially impaired in this instance. We conclude, therefore, that the Board applied the law properly and that there is substantial evidence on the record to support the Board's conclusion that Pacheco was discharged for the performance of protected activities in violation of the Act.

[Remainder of opinion not published]

*The Board's order shall be enforced.*