**UNITED PARCEL SERVICE, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 82–3318.

United States Court of Appeals, Third Circuit.

Argued Feb. 15, 1983.

Decided April 18, 1983.

Rosenn, Circuit Judge, concurred and dissented and filed opinion.

James D. Crawford (argued), Bernard G. Segal, Martin Wald, Frank C. Sabatino, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for petitioner; Matthew R. Westfall, Baird, Kirven, Westfall & Talbott, Louisville, Ky., of counsel.

Joseph A. Oertel (argued), William A. Lubbers, General Counsel, John E. Higgin, Jr., Deputy General Counsel, Robert E. Allen, Associate General Counsel, Elliott Moore, Deputy Assoc. General Counsel, N.L.R.B., Washington, D.C., for respondent.

Before GIBBONS, HUNTER and ROSENN, Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

On May 21, 1982, the National Labor Relations Board ("Board") issued a decision and order holding that United Parcel Service, Inc. ("UPS") had committed certain unfair labor practices under the National Labor Relations Act, 29 U.S.C. §§ 151–169 (1976 & Supp. V 1981) ("Act"). The Board held that UPS had violated section 8(a)(1)

of the Act, 29 U.S.C. § 158(a)(1) (1976), by promulgating, maintaining, and enforcing an unlawfully broad no-distribution of literature rule. It also held that UPS had violated sections 8(a)(1), 8(a)(3), and 8(a)(4) of the Act, 29 U.S.C. § 158(a)(1), (a)(3), (a)(4) (1976), by unlawfully discharging Robert W. Bowlds and David E. Perkins, two UPS employees.

This action is a petition for review and a cross-application for enforcement of that order. For the reasons stated herein we will enforce in part, and we will remand in part.

## I

### A. Driver Robert Bowlds

Bowlds was originally hired by UPS in 1965. For the six or seven years prior to the instant unfair labor proceeding, he worked as a "feeder driver" out of UPS's Owensboro, Kentucky facility.[1] Bowlds also served as the Teamsters Local 89 steward at the Owensboro terminal.[2] In his position as steward Bowlds filed grievances, participated in grievance hearings, and assisted the Professional Drivers Council ("PROD"), a Teamsters' organization. Since 1975 Bowlds had also been a member of "UPSurge," a nationwide organization of UPS employees dedicated to improving their wages, hours, and working conditions. Bowlds testified that he had been openly involved with both UPSurge and PROD at the Owensboro terminal[3] and had distributed their literature in the presence of UPS supervisors. App. at 413a–15a, 419a–23a.[4]

Bowlds had a running history of disputes with UPS. On April 24, 1978, UPS discharged Bowlds, assertedly because he falsified his timecard and overextended his rest breaks.[5] On May 8, 1978, as a result of a contractual grievance proceeding, Bowlds was reinstated, and the discharge was converted into a suspension. On May 24, 1978, Bowlds was issued a "final warning" for taking excessive time on his breaks. That warning was rescinded on June 14, 1978, also after a grievance proceeding. On August 4, 1978, UPS discharged Bowlds for a second time, again asserting that he had overextended his breaks and falsified his timecard. On October 3, 1978, a grievance panel reduced the discharge to a "Disciplinary Suspension and Final Warning."

Both the May 24, 1978 final warning letter and the August 4, 1978 discharge were the subject of an unfair labor practice proceeding brought by the General Counsel against UPS. The Board held that those actions violated sections 8(a)(1) and 8(a)(3) of the Act. *United Parcel Service, Inc.*, 252 N.L.R.B. 1015, 1019 (1980), *enforced*, 677 F.2d 421 (6th Cir.1982) ("*United Parcel Service I*").[6] The Board issued a cease and desist order, awarded Bowlds back pay, and ordered the May 24, 1978 warning letter expunged from his file. *United Parcel Service I*, 252 N.L.R.B. at 1016, 1023.

UPS claims that in July and August of 1979 it again became concerned about Bowlds' consistent late arrival at the Owensboro Center. The Company decided to observe Bowlds on the night of August

1. As part of its operation, UPS employs feeder drivers who drive fixed delivery routes between UPS facilities. Those drivers operate out of a home location and shuttle packages to and from specific distribution depots. At those distribution points the packages are resorted and then loaded on to other UPS trucks for further delivery.

2. At all times relevant to this action, Teamsters Local 89 was the exclusive bargaining agent for the Company's employees. App. at 142a n. 1.

3. In the instant case the ALJ found that employee activity on behalf of PROD and UPSurge constituted concerted protected activity under the Act. App. at 143a.

4. In addition in March of 1977, Bowlds initiated a class action suit against UPS alleging that UPS had violated a Kentucky statute requiring employers to grant periodic ten-minute rest breaks.

5. For UPS's distribution systems to function properly, all feeder drivers must keep to a preset schedule. Departure times, rest stops, and arrival times are all predetermined to ensure the continuous and efficient flow of packages from terminal to terminal. Company policy requires that a driver's timecard accurately reflect the amount of time that he spends on the road and on his breaks. App. at 832a–36a; *see* app. at 145a n. 4, 158a n. 16; 366a–68a, 408a–10a, 980a–81a.

6. In its decision the Board noted several instances where Company supervisors indicated shortly after the issuance of the May 24, 1978 warning letter that they were going to "get" Bowlds. *United Parcel Service I*, 252 N.L.R.B. at 1021.

27–28 during one of his normally scheduled runs.[7] According to the supervisors who trailed him, Bowlds overstayed his allotted rest periods on that run by forty-three minutes. On the next night the Company suspended Bowlds allegedly for overextending his breaks and falsifying his timecard. Three days later UPS informed Bowlds that he was discharged.

### B. Driver David Perkins

Perkins has been employed at UPS's Campbellsville, Kentucky facility as a feeder driver since 1971 and, like Bowlds, has actively been involved with union activity. He testified that he had openly distributed UPSurge and PROD material at Campbellsville several times, and that he had collected money and solicited signatures for the class action suit brought by Bowlds against UPS.

On February 14, 1979, Perkins filed a grievance protesting UPS's alleged failure to assign him sufficient work. That grievance was resolved against him. App. at 90a; 648a–50a. Perkins testified that two weeks later he had a conversation with Tom Mouser, the Campbellsville Terminal Manager, about obtaining some work pants. According to Perkins, Mouser stated: "Perkins, we're trying to figure out a way to fire your ass anyway. We won't have to get you any." App. at 652a. That statement was made in front of two other employees, Bobby Pierce and Eddy O'Banion, who both corroborated Perkins' version of events. App. at 150a; 224a–25a, 234a–35a, 652a–53a.

Perkins also stated that in February or March of 1979, Mouser approached him at the Campbellsville facility and brought up the subject of UPSurge. He testified:

> [Mouser] asked me if I had been distributing some papers around Campbellsville, and I said yes. And I told him we had the right to as long as the man wasn't on the clock working.
>
> And he responded, "Well, I'd rather you didn't do it."

App. at 643a. At the time Mouser made his statement, Perkins was not distributing literature. Perkins testified that despite Mouser's statement, he continued to distribute UPSurge material at least two more times over the next few months. App. at 644a–45a.

UPS contends that throughout the summer of 1979, Perkins habitually returned late to Campbellsville after completing his regularly scheduled route. In conjunction with its observation of Bowlds, UPS decided to observe Perkins on the night of August 27–28. Company supervisors testified that they followed Perkins to a rest stop where they observed him overstay his rest break. On the next evening Perkins' supervisor told him that he was suspended for overextending his rest break and falsifying his timecard. On August 30, 1979, Perkins was formally told that he was being discharged.

### C. The Grievance Proceedings

Both Bowlds and Perkins filed grievances over their discharges under the grievance procedures in their union contract. An initial meeting was held on Bowlds' grievance on September 11, 1979. Bowlds' grievance was read into the record,[8] and Bowlds stat-

---

7. UPS has a policy of putting under observation drivers who are suspected of excessive delays. In the past ten years several feeder drivers have been placed under observation for allegedly overstaying their rest breaks. A driver will not be put under observation, however, until the situation has been discussed between the driver and his supervisor and until after the driver has had an opportunity to remedy the problem. App. at 144a & n. 3; 864a–66a.

8. Bowlds' grievance states [sic]:

On Aug 28th I was called to work early at 7:00 PM and told by Ben Cissel that I was suspended for overextending my break and falsifying a time card. Cissel said he could not give me the details and date therefore denying me a chance to prove myself innocent. I[t] was not until Aug 31st at 9:00 AM

that I was told that I was terminated and questioned about my 15 min. breaks the night of Aug 27th. I think the Company withheld the details of this charge against me as long as possible to make it harder to defend myself. I did not overextend my break or falsify. Anytime I stoped my truck, other than the 15 minute break shown on my card, was because I was very sleepy and had to pull off the road long enough to get myself woke up so I would not have an accident. Although I could get myself awake and alert for short periods I continued to be sleepy & drowsy, the rest of the night. I have not been late with my load nor have I ever missed a scheduled days work.

But once again I think I was terminated for my union activities, union related activities

ed that he was innocent of the UPS's charges. UPS presented testimony supporting its claim that Bowlds had overextended his breaks and falsified his timecard. The panel deadlocked, and the grievance was referred to the state level. The grievance was heard before the state panel on October 9, 1979, but the parties again deadlocked. On October 30, 1979, the Joint Area Conference heard Bowlds' grievance but the parties again were unable to resolve the dispute. Finally on November 20, 1979, the grievance was placed on the Joint Area Conference's "Deadlocked Agenda," and after a hearing Bowlds' discharge was upheld.

Perkins' grievance was also initially heard on September 11, 1979. A UPS supervisor testified that Perkins had been observed taking a thirty-two minute break although his timecard only reflected a fifteen minute break. Perkins' grievance was read,[9] and two affidavits were submitted in his defense. The hearing was deadlocked, and Perkins' grievance was referred to the state level. After a hearing before the state panel, Perkins was granted immediate reinstatement without backpay.

### II

■ Following their discharges both Bowlds and Perkins filed charges with the Board's Regional Director claiming that UPS had unlawfully discriminated against them because of their protected activities. On October 24, 1979, the Regional Director issued a consolidated complaint charging UPS with unfair labor practices. The complaint alleged that UPS had violated section 8(a)(1) of the Act by unlawfully promulgating and enforcing a rule prohibiting distribution of UPSurge's written material on UPS property.[10] Order Consolidating Cases, Consolidated Complaint and Notice of Hearing ¶ 5, 9, 11, app. at 3a, 4a. It also alleged that UPS had violated sections 8(a)(1), 8(a)(3), and 8(a)(4) of the Act by unlawfully discharging Bowlds and Perkins. Id. at ¶ 6, 7, 8, 9, 11, app. at 3a, 4a.

An Administrative Law Judge held hearings and issued a decision on October 3, 1980. He initially determined that the General Counsel's complaint should not be dismissed on *Spielberg* deferral grounds.[11] Turning to the merits he found that in February and March of 1979, UPS had promulgated, maintained, and enforced an "ambiguous" written rule prohibiting distribution of literature on UPS property at any time. The ALJ found that Mouser enforced this rule, pointing specifically to Mouser's statement of "I'd rather you didn't do it," made to Perkins concerning the distribution of UPSurge material. App. at 156a–57a.[12]

---

and my direct involvement in the class action suit to get the company to comply with state law on 10 minutes Rest Periods. I think the company singled me out to build a case against me in the NLRB hearing set for Sept 11th.

I ask the Union treat me equal to all the other feeder drivers and see the Company has not. I ask that I be reinstated fully with pay for all time lost, and be allowed to do an honest and dependable job.

App. 120a–21a (emphasis in original).

9. Perkins' grievance states:

On the night of Aug. 28, 1979 I was suspended for aledgedly extending my brake and falsifying my time card. I was given no time or dates of this occurance to defend myself. On Aug. 30, 1979 I was called to work at my regular start time only to be fired for the above acuations. They did not have the exact times they recorded me but only the length I was there which was 32 minutes and a lie.

The above charges are degrading and have damaged my Employment Record. I want to be compensated for all time off and all docu-

ments of this occurance stricken from my records.

App. at 86a.

10. Employees have the right to distribute union literature in nonworking areas of the employer's premises during nonwork periods. Employers may not interfere with that right except to the extent necessary to maintain production or discipline. *See Eastex, Inc. v. NLRB,* 437 U.S. 556, 570–75, 98 S.Ct. 2505, 2514–17, 57 L.Ed.2d 428 (1978); *Republic Aviation Corp. v. NLRB,* 324 U.S. 793, 801–05, 65 S.Ct. 982, 987–89, 89 L.Ed. 1372 (1945).

11. *Spielberg Mfg. Co.,* 112 N.L.R.B. 1080 (1955).

12. Mouser denied that he ever made that statement, but the ALJ found him not to be a credible witness. Both the Board and this court are generally bound by credibility determinations made by the ALJ. *See Behring International, Inc. v. NLRB,* 675 F.2d 83, 86 (3d Cir.1982), *petition for cert. filed,* 51 U.S.L.W. 3199 (U.S. Sept. 13, 1982) (No. 82–438); *Standard Dry Wall Products, Inc.,* 91 N.L.R.B. 544 (1950), *enforced,* 188 F.2d 362 (3d Cir.1951).

Based on these facts the ALJ held that UPS had violated section 8(a)(1) of the Act.

Turning to the discharges of Bowlds and Perkins, the ALJ found not credible the supervisors' testimony that Bowlds and Perkins had overextended their breaks. App. at 160a, 162a. He determined that, as a general matter, late returns by Bowlds and Perkins were due to delays in getting out of other terminals. Id. The ALJ also found that Bowlds and Perkins had been singled out for "extraordinary surveillance" because of their union activity. Id. While the ALJ did find some discrepancies on the two employees' timecards, he held that they were of a "minor nature." App. at 162a. The ALJ concluded:

> In the instant case, I have found that the General Counsel made a *prima facie* showing sufficient to support the inference that protected conduct was the motivating factor in the suspension and discharges of Bowlds and Perkins, and in my view the Respondent has failed to demonstrate that such actions would have taken place in the absence of the protected conduct. In accordance therewith, the Respondent is in violation of sections 8(a)(1), (3), and (4) of the Act.

App. at 163a.

UPS filed exceptions to the ALJ's decision on December 12, 1980. On May 21, 1982, the Board issued a decision and order adopting the findings and conclusions of the ALJ. *United Parcel Service, Inc.*, 261 N.L.R.B. No. 134 (1982) ("*United Parcel Service II*"). The Board, however, slightly changed the basis for its finding of an 8(a)(1) violation.

> In affirming the Administrative Law Judge's conclusion that Respondent violated Sec. 8(a)(1) of the Act by promulgating, maintaining, and enforcing an unlawfully broad no-distribution rule, we refer solely to the implied restrictions against distribution on nonworking time

which Supervisor Mouser communicated to employee Perkins in a February or March 1979 conversation. We find no need to decide whether Respondent's written no-solicitation, no distribution rules also violated Sec. 8(a)(1).

*Id.* at 2 n. 3. The Board specifically upheld the ALJ's "broad" remedial order that the Company cease and desist "in any like or related manner" from interfering with employees' section 7 rights. The Board found that the award was warranted because "Respondent has shown a proclivity to violate the Act and has engaged in such egregious and widespread misconduct as to demonstrate a general disregard for the employees' fundamental Sec. 7 rights." *Id.* at 2 n. 4; *see NLRB v. Local 483 and Local 11,* 672 F.2d 1159, 1168 (3d Cir.1982).

UPS filed a petition to review the Board's decision on July 8, 1982. The Board filed a cross-application for enforcement on August 17, 1982.

### III

#### A. The Section 8(a)(1) Violation—Distribution of UPSurge Literature

UPS contends that we should not enforce the Board's order holding that UPS violated section 8(a)(1) of the Act. First UPS asserts that Mouser's statement, relied upon by the Board for its finding of a section 8(a)(1) violation, was not part of the General Counsel's consolidated complaint nor the basis for the ALJ's decision. UPS claims that the Board's "eleventh hour modification" of the issue prejudiced it from properly asserting a defense to the Board's charges because at the evidentiary hearings it focused its efforts on disproving the alleged written policy rather than on rebutting any alleged individual coercion by Mouser. The Board claims that UPS did have adequate notice of the charges against it. It argues that paragraphs 5(c) and 9 of the consolidated complaint[13] adequately in-

13. Paragraph 5 of the Order Consolidating Cases, Consolidated Complaint and Notice of Hearing reads:

    (a) On of about an unknown date in March, 1979, the Respondent at its facility promulgated and since said date has maintained the following rule:

No distribution of UPSurge written material on the Respondent's property at any time.

    (b) The Respondent promulgated the rule described above in subparagraph 5(a) in order to discourage its employees from joining, supporting or assisting UPSurge, an organization of employees which is designed to inform and influence the Respondent's em-

formed UPS of the allegation that Mouser's statement violated the Act.

■ Both the Administrative Procedure Act and the Board's own rules require that a complaint properly inform a charged party of any asserted violation. 5 U.S.C. § 554(b)(3) (1976); 29 C.F.R. § 102.15 (1982).[14] "The Board may not make findings or order remedies on violations not charged in the General Counsel's complaint or litigated in the subsequent hearing." *George Banta Co. v. NLRB,* 686 F.2d 10, 17 (D.C.Cir.1982) (quoting *NLRB v. Blake Construction Co.,* 663 F.2d 272, 279 (D.C.Cir. 1981) (citing cases)), *petition for cert. filed,* 51 U.S.L.W. 3554 (U.S. Jan. 10, 1983) (No. 82–1162); *see Soule Glass and Glazing Co. v. NLRB,* 652 F.2d 1055, 1073–75 (1st Cir. 1981). Even where evidence supporting a remedial order is in the record, courts have refused to grant enforcement of a Board order in the absence of either a supporting allegation in the complaint or a meaningful opportunity to litigate the underlying issue before the ALJ. *See, e.g., Blake* 663 F.2d at 279; *Montgomery Ward & Co. v. NLRB,* 385 F.2d 760, 763–64 (8th Cir.1967).

■ Although the thrust of the original complaint was that UPS's written policy violated the Act, it specifically referred to the actions Mouser took in March of 1979 to enforce the no-distribution rule. More importantly, UPS had a meaningful opportunity to litigate the issue of whether Mouser actually made the alleged statement or, if made, whether the statement was coercive. On direct examination by UPS, Mouser specifically denied that he had ever made the disputed statement to Perkins. App. at

1015a–16a. In reaching its conclusions, the Board merely accepted the ALJ's findings crediting Perkins' testimony over Mouser's. *United Parcel Service II,* 261 N.L.R.B. No. 134, at 2 n. 2; *see* app. at 156 n. 14. Based on this record we find that UPS had sufficient notice about Mouser's statement to defend adequately the charge that that statement constituted a section 8(a)(1) violation under the Act and therefore was not unduly prejudiced by the Board's holding, *cf. Soule,* 652 F.2d at 1074 (test is one of fairness under the circumstances of each case).

UPS's second argument against enforcement is that the Board's conclusion that Mouser's statement violated section 8(a)(1) of the Act is not supported by substantial evidence. UPS asserts that Mouser's "innocuous" statement should not be considered coercive because the utterance was extremely short and because there is no evidence that it was made in a threatening tone.

■ Section 8(a)(1) makes it an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section [7] of this title." 29 U.S.C. § 158(a)(1) (1976). To establish a violation of that section, "it need only be shown that '*under the circumstances existing,* [the employer's conduct] may reasonably tend to coerce or intimidate employees in the exercise of rights protected under the Act.'" *United States Steel Corp. v. NLRB,* 682 F.2d 98, 101 (3d Cir.1982) (emphasis added) (quoting *NLRB v. Armcor Industries, Inc.,* 535 F.2d 239, 242 (3d Cir.1976) (quoting *Local 542 v. NLRB,* 328 F.2d 850, 852–53 (3d Cir.), *cert. denied,*

ployees concerning the actions and policies of the Respondent and Teamsters Local 710 and Teamsters Local 89 with respect to wages, hours, and working conditions.

(c) *On or about an unknown date in March, 1979, the Respondent by its officer and agent Tom Mouser, maintained and enforced the rule described above in sub-paragraph 5(a) by prohibiting its employees from passing out UPSurge materials at anytime while they were on company property.*

Paragraph 9 reads:

By the acts described above in paragraph 5 through 8, *and by each of said acts,* the Respondent did interfere with, restrain, and coerce, and is interfering with, restraining,

and coercing its employees in the exercise of the rights guaranteed in Section 7 of the Act, and thereby did engage in, and is engaging in, unfair labor practices affecting commerce within the meaning of Section 2(6) and (7) of the Act.

App. at 2a–4a (emphasis added).

14. General principles of due process also require that persons charged with unlawful conduct be given prior notice of the charges and an opportunity to be heard in defense before the Government can take enforcement action. *Huck Mfg. Co. v. NLRB,* 693 F.2d 1176, 1182 (5th Cir.1982); *Soule Glass and Glazing Co. v. NLRB,* 652 F.2d 1055, 1073 (1st Cir.1981).

379 U.S. 826, 85 S.Ct. 52, 13 L.Ed.2d 35 (1964)); *see NLRB v. Keystone Pretzel Bakery, Inc.,* 696 F.2d 257, 259–60 (3d Cir. 1982) (en banc). Our standard of review is whether there is substantial evidence on the record as a whole, including any evidence detracting from the Board's view, to support the Board's finding of a violation. *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951); *United States Steel Corp.,* 682 F.2d at 101.

In affirming the ALJ's determination that UPS violated section 8(a)(1) of the Act, the Board relied solely on Mouser's statement to Perkins that he would "rather not" have Perkins distribute literature. 261 N.L.R.B. No. 134, at 2 n. 3. We have recently held that where an incident of alleged interference with the distribution of literature is trivial and isolated and only imposes a negligible burden on employees' rights, it will not rise to the level of a violation of the Act. *Graham Architectural Products Corp. v. NLRB,* 697 F.2d 534, 542 (3d Cir.1983). The Board argues that Mouser's statement is not an isolated comment but rather part of a long-standing pattern of restraining the distribution of literature during non-working time. It asserts that when Mouser's statement is examined against the "backdrop of . . . hostility" to section 7 rights, it should be considered coercive and therefore violative of the Act.

■ Viewing all the circumstances, we hold that substantial evidence exists in the record to uphold the Board's finding of a section 8(a)(1) violation. It is true that Mouser's statement, on its face, could be considered noncoercive. Perkins, however, had recently filed a grievance against Mouser and UPS. App. at 648a–50a; *see* app. at 90a. On February 28, 1979, in the presence of two other employees, Mouser said to Perkins "we're trying to figure out a way to fire your ass." App. at 150a; 652a. The ALJ took official notice that the Board had previously determined that UPS and its supervisors had engaged in various unfair labor practices, in connection with UPS's opposition to employee involvement with UPSurge. App. at 142a–43a. In light of these facts we think that the record supports the Board's finding that Mouser's statement tended to impose unlawful restrictions on Perkins' right to distribute literature.[15] Accordingly, we affirm the Board's holding that the statement violated section 8(a)(1).[16]

### B. The Sections 8(a)(1), 8(a)(3), and 8(a)(4) Violations—The Discharges of Bowlds and Perkins

UPS urges us to reject the Board's conclusion that the discharges of Bowlds and

---

**15.** We agree with the ALJ's statement that "the mere fact that the tone of the conversation may have been friendly or conciliatory does not, of course, erase the implied restrictions by Mouser." App. at 157a.

**16.** In its opening brief and in its reply brief, UPS raised a third argument against enforcing the Board's order. It asserted that the Board's "re-characterization" of the § 8(a)(1) violation presented a statute of limitations problem under § 10(b) of the Act, 29 U.S.C. § 160(b) (1976), because Mouser's alleged statement occurred more than six months prior to the filing of the unfair labor practice charge.

On December 6, 1982, the Board filed a motion to strike UPS's statute of limitations defense because it had not been properly presented to the Board. *See* 29 U.S.C. § 160(e) (1976). In response to the Board's motion, UPS argues that it did raise the issue, pointing to one sentence in its brief submitted in support of its exceptions to the ALJ's decision. The Board's regulations, however, state that a matter must be included in a party's *exceptions* before it will be considered by the Board. *See* 29 C.F.R.

§ 102.46 (1982); *see also* 29 C.F.R. § 102.34(b) (brief filed in support of exceptions not included in record of case). UPS concedes that it did not raise the issue in its formal exceptions, and thus under § 10(e) of the Act and the Board's regulations, it is barred from raising that issue before us.

UPS further argues that even if it did not meet the requirements of § 10(e), it should not be precluded from raising the statute of limitations issue because "the issue was not interjected into the litigation until the NRLB's final order." *Cf. NLRB v. Richards,* 265 F.2d 855, 862 (3d Cir.1959) (party not barred from raising before court issue of law initially created by the Board's order). The ALJ's holding, however, specifically based the § 8(a)(1) violation on activity in February and March of 1979. App. at 157a. Thus the statute of limitations issue could have been raised by UPS before the Board in response to the ALJ's finding of when a violation occurred. UPS's failure to raise that issue before the Board precludes our review at this stage.

Perkins violated sections 8(a)(1), 8(a)(3),[17] and 8(a)(4)[18] of the Act. First, it argues that the Board abused its discretion by refusing to defer to the grievance panel decisions concerning the discharges of Bowlds and Perkins. Second, it argues that if we find that the Board properly exercised its jurisdiction, we should not enforce the Board's order because the General Counsel failed to meet its threshold burden of establishing a *prima facie* case of unlawful discrimination. Finally, it argues that, even assuming establishment of a *prima facie* case, the Board's order can not be enforced because the ALJ erroneously shifted to UPS the burden of proving that the discharges were not discriminatory.

## 1. Deferral to the Grievance Proceedings

■ In a series of decisions beginning with *Spielberg Manufacturing Co.*, 112 N.L.R.B. 1080 (1955), the Board has ruled that it will defer to an arbitrator's award if four criteria are met: (1) the proceedings have been fair and regular; (2) the parties agreed to be bound; (3) the decision was not "clearly repugnant" to the purposes and policies of the Act; and (4) the arbitration

has decided the statutory issue currently under review. *Suburban Motor Freight, Inc.*, 247 N.L.R.B. 146 (1980); *Collyer Insulated Wire*, 192 N.L.R.B. 837 (1971); *Raytheon Co.*, 140 N.L.R.B. 883 (1963), *enforcement denied on other grounds*, 326 F.2d 471 (1st Cir.1964); *see Hammermill Paper Co. v. NLRB*, 658 F.2d 155, 159–61 (3d Cir.1981), *petition for cert. filed*, 50 U.S.L.W. 3622 (U.S. Jan. 29, 1982) (No. 81–1438); *NLRB v. General Warehouse Corp.*, 643 F.2d 965, 968–71 (3d Cir.1981); *NLRB v. Pincus Brothers, Inc.-Maxwell*, 620 F.2d 367 (3d Cir.1980); *cf. Schaefer v. NLRB*, 697 F.2d 558 (3d Cir.1983) (Board deferral to private settlement agreements).[19] The Board's policy of deferral is designed to promote industrial peace and stability by encouraging the private resolution of disputes. *Spielberg*, 112 N.L.R.B. at 1082.[20] In reviewing a Board decision not to defer to an arbitrator's award, we are limited to determining whether the Board abused its discretion. *Herman Brothers, Inc. v. NLRB*, 658 F.2d 201, 207 (3d Cir.1981); *General Warehouse Corp.*, 643 F.2d at 968 & n. 10; *see NLRB v. South Central Bell Telephone Co.*, 688 F.2d 345, 350 & n. 7 (5th Cir.1982), *petition for cert. filed*, 51 U.S.L.W. 3485 (U.S. Dec. 16, 1982) (No. 82–1016).

17. Section 8(a)(3) of the Act states:
   It shall be an unfair labor practice for an employer—

   . . . . .

   (3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: 29 U.S.C. § 158(a)(3) (1976).

18. Section 8(a)(4) of the Act states:
   It shall be an unfair labor practice for an employer—

   . . . . .

   (4) to discharge or otherwise discriminate against an employee because he has filed charges or given testimony under this subchapter; 29 U.S.C. § 158(a)(4) (1976).

19. The first three parts of the Board's test were originally formulated in *Spielberg*. 112 N.L.R.B. at 1082. The fourth element, actually "a prerequisite to the *Spielberg* standards," *General Warehouse*, 643 F.2d at 969 & n. 12, was articulated in *Raytheon Co.*, 140 N.L.R.B. 883 (1963), *enforcement denied on other grounds*, 326 F.2d 471 (1st Cir.1964), as a separate and distinct factor. *NLRB v. Motor Convoy, Inc.*, 673 F.2d 734, 735 & n. 3 (4th Cir.1982); *see*

*Professional Porter & Window Cleaning Co.*, 263 N.L.R.B. No. 34 (1982). *See generally NLRB v. Babcock and Wilcox Co.*, 697 F.2d 724 (6th Cir.1982); *NLRB v. South Cent. Bell Tel. Co.*, 688 F.2d 345 (5th Cir.1982), *petition for cert. filed*, 51 U.S.L.W. 3485 (U.S. Dec. 16, 1982) (No. 82–1016); *Liquor Salesmen's Union Local 2 v. NLRB*, 664 F.2d 318 (2d Cir.1981), *cert. denied*, 456 U.S. 973, 102 S.Ct. 2236, 72 L.Ed.2d 847 (1982); *NLRB v. Designcraft Jewel Indus.*, 675 F.2d 493 (2d Cir.1982); *Pioneer Finishing Corp. v. NLRB*, 667 F.2d 199 (1st Cir.1981), *petition for cert. filed*, 50 U.S.L.W. 3949 (U.S. May 22, 1982) (No. 81–2162); Murphy & Sterlacci, *A Review of the National Labor Relations Board's Deferral Policy*, 42 Ford. L.Rev. 291 (1973); Note, *Spielberg Reconsidered—Problems in Application and Content of the Deferral Doctrine*, 49 Ford.L.Rev. 1116 (1981); Note, *Limiting Deferral Under the Spielberg Doctrine*, 67 Va.L.Rev. 615 (1981).

20. *See William E. Arnold Co. v. Carpenters Dist. Council*, 417 U.S. 12, 16–17, 94 S.Ct. 2069, 2072, 40 L.Ed.2d 620 (1974); *Carey v. Westinghouse Elec. Corp.*, 375 U.S. 261, 270–72 & n. 7, 84 S.Ct. 401, 408–9 & n. 7, 11 L.Ed.2d 320 (1964); *Hammermill*, 658 F.2d at 159 n. 8; *General Warehouse Corp.*, 643 F.2d at 968 n. 11.

In the instant case, no evidence of Bowlds' and Perkins' protected activities was presented at any stage of the grievance proceedings. Tom Trenaman, the Local 89 Business Agent who represented both employees before the grievance panel, admitted that he never met with Bowlds or Perkins before the grievance panel meetings, never went over their testimony with them, and never introduced any evidence concerning their PROD or UPSurge activities. Other than a passing reference in Bowlds' grievance, no mention was made before the panel of the class action lawsuit against UPS, of the other grievances filed by Bowlds or Perkins, or of their previous testimony before the Board.[21] The panel decisions made no reference to any concerted or protected activities on the part of Bowlds or Perkins.

We find that the Board properly exercised its jurisdiction over the unfair labor practice proceedings. We have previously held that "for the Board's deferral policy not to be one of abdication, the Board must be presented with some evidence that the statutory issue has actually been decided." *General Warehouse,* 643 F.2d at 969 (footnotes omitted). The instant record is devoid of any such evidence. There is nothing to indicate that the statutory issue was fully presented to or considered by the grievance panels.[22] Based on that record, the Board did not abuse its discretion by refusing to defer.[23]

---

21. UPS argues that because Bowlds' grievance mentions his union activities and because it was read into the record at every stage of the proceedings, the grievance panel was sufficiently apprised of the statutory issues to require deference by the Board under *Spielberg.* We have stated:

> The Board's fourth requirement will be deemed met "[i]f there is substantial and definite proof that the unfair labor practice issue and evidence were expressly presented to the arbitrator and *[that] the arbitrator's decision indisputably resolve[d] the [unfair labor practice] issue....*" *Stephenson,* 550 F.2d [535] at 538 n. 4 (emphasis added). If "the arbitrator's decision is ambiguous as to the resolution of the statutory issue, [we must hold that] the 'clearly decided requirement has not been met.'" *Id.*

*General Warehouse,* 643 F.2d at 969 n. 16 (quoting *Stephenson v. NLRB,* 550 F.2d 535 (9th Cir.1977)); *see Hammermill,* 658 F.2d at 160–61. Mere passing reference in Bowlds' grievance to his protected activities is not "substantial and definite proof" that the statutory issue was "indisputably resolve[d]."

We note that the Board's refusal to defer in the instant case is consistent with its treatment of the same issue in *United Parcel Service I.* In that decision the Board stated:

> Because the Union's failure both to advocate Bowlds' claim that he was discharged for dissident activities and to present evidence on that claim, we find deferral inappropriate. In these circumstances, it is not enough that Bowlds' grievance was read at each step of the proceeding, even though in the grievance Bowlds contended that he was discharged for his "union activities and involvement in a class action suit...." The mere presentation of the contention, without more, cannot support deferral.

252 N.L.R.B. 1015, 1016 (1980) (footnote omitted). The Sixth Circuit affirmed the Board's ruling on the *Spielberg* issue. *NLRB v. United Parcel Service, Inc.,* 677 F.2d 421, 422 (6th Cir.1982).

22. Because the grievance panels did not consider or resolve the unfair labor practice issues, the ALJ and the Board did not have to consider the other *Spielberg* criteria when deciding whether to defer. *General Warehouse,* 643 F.2d at 969; *Professional Porter & Window Cleaning Co.,* 263 N.L.R.B. No. 34, at 5 n. 3 (1982). Accordingly we do not reach the Board's other argument that the arbitrator's decision as to Bowlds was "clearly repugnant" to the Act.

23. UPS argues that the arbitrator's decision to uphold Bowlds' discharge implicitly decided that UPS did not discriminate in violation of the Act. The collective bargaining agreement explicitly prohibits "any discrimination against any employee because of union membership or activities." App. at 29a. Thus UPS argues that the decision to uphold Bowlds' discharge "necessarily" was a decision holding that the Company had not discriminated against Bowlds because of his protected activity.

While an arbitrator's award may "evince resolution of unfair labor practice issues," *Hammermill,* 658 F.2d at 160, a finding favorable to the employer does not automatically dispose of a claim of discriminatory discharge in violation of the Act. *Id.; General Warehouse,* 643 F.2d at 969 & n. 13. When *no* evidence of protected activity is presented to the arbitrator and the arbitrator's decision makes *no* mention of statutorily protected rights, we find it difficult to conclude "that the arbitrator consider[ed] the statutory issue and rule[d] on it or all the facts required to decide it." *General Warehouse,* 643 F.2d at 969 & n. 17. *But cf. Motor Convoy,* 673 F.2d at 736 (based on the evidence presented to the arbitration panel, inherent in its decision was a resolution of the question of whether employee was fired for protected union activities).

### 2. The General Counsel's Prima Facie Case

UPS contends that even if the Board properly refused to defer to the grievance panel's decision, we should not enforce the Board's order. It asserts that the General Counsel, when presenting his case to the ALJ, failed to meet his threshold burden of making a *prima facie* showing of unlawful discrimination.

To establish a *prima facie* case, the General Counsel must present sufficient evidence to support the inference that protected conduct was a motivating factor in the employer's decision. *Behring International, Inc. v. NLRB,* 675 F.2d 83, 88, 90 (3d Cir.1982), *petition for cert. filed,* 51 U.S. L.W. 3199 (U.S. Sept. 13, 1982) (No. 82–438). As the Supreme Court explained in *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981):

> [T]he prima facie case "raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee. If the trier of fact believes the plaintiff's evidence, and if the employer is silent in the face of the presumption, the court must enter judgment for the plaintiff because no issue of fact remains in the case.

*Id.* at 254, 101 S.Ct. at 1094 (quoting *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978)) (footnote omitted). The burden of establishing a *prima facie* case is not onerous. *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093.

We do not think that the ALJ erred in holding that the General Counsel established a *prima facie* case of unlawful discrimination. The General Counsel produced evidence that UPS knew that Bowlds and Perkins were involved in widespread protected activity, including organizing efforts for UPSurge. The General Counsel also presented evidence that Bowlds and Perkins, at the time of their discharges, were involved in another unfair labor practice proceeding concerning alleged discrimination for union activity. Bowlds and Perkins both testified that, contrary to reports by UPS's supervisors, they did not overextend their breaks on the night of August 27–28. Evidence corroborating their testimony was introduced by the General Counsel.[24] Those facts are sufficient to support an inference that UPS discharged Bowlds and Perkins for their protected activities. Accordingly, we hold that the General Counsel met his threshold burden of establishing a *prima facie* case of discriminatory discharge.

### 3. The Burden of Proof Issue

UPS's final contention is that, assuming establishment of a *prima facie* case, the ALJ improperly shifted to UPS the burden of proving that Bowlds and Perkins would have been discharged regardless of their protected activity. In *Behring International, Inc. v. NLRB,* we outlined the appropriate burdens of going forward and of proof to be applied in a discriminatory discharge case.

> Under our formula, once the General Counsel has established a *prima facie* case of discriminatory discharge, the employer should rebut this with evidence of a legitimate business reason for its action. The ultimate burden of proof does not shift from the General Counsel and does not devolve upon the employer at any stage. Therefore, no violation may be found unless the Board determines that the General Counsel has proved by a preponderance of the evidence that the employer's antiunion animus was the real cause of the discharge.

675 F.2d 83, 90 (3d Cir.1982), *petition for cert. filed,* 51 U.S.L.W. 3199 (U.S. Sept. 13, 1982) (No. 82–438); *see NLRB v. Blackstone,* 685 F.2d 102, 105 (3d Cir.), *petition for cert. filed,* 51 U.S.L.W. 3512 (U.S. Dec. 30, 1982) (82–1105). UPS argues that the Board failed to apply that test when it determined that UPS had violated the Act by discharging Bowlds and Perkins. UPS contends that the Board instead applied its

24. App. at 247a–49a, 275a, 278a, 472a–76a, 529a–31a, 631a.

*Wright Line* test, which shifts the burden of persuasion on the issue of motive to the employer once the General Counsel establishes a *prima facie* case of discriminatory discharge. *See Wright Line, a Division of Wright Line, Inc.,* 251 N.L.R.B. 1083 (1980), *enforced,* 662 F.2d 899 (1st Cir.1981), *cert. denied,* 455 U.S. 989, 102 S.Ct. 1612, 71 L.Ed.2d 848 (1982).[25] Accordingly, UPS urges us to deny enforcement.

█ We agree that the ALJ and the Board misallocated the burden of persuasion in the instant case. In his decision the ALJ clearly shifted to UPS the burden of proving that the discharges would have taken place in the absence of any protected conduct. App. at 163a. The Board specifically affirmed the ALJ's rulings, findings, and conclusions. Because the ALJ's and the Board's decisions are in contravention of our holding in *Behring,* we cannot enforce the Board's order and must remand to the Board for reconsideration. *Blackstone,* 685 F.2d at 106; *Behring,* 675 F.2d at 91.

### IV

We will vacate the Board's order reinstating Bowlds and Perkins and awarding them backpay and other benefits, and we will remand the case for further proceedings. In all other respects we will enforce the Board's order.

ROSENN, Circuit Judge, concurring and dissenting.

I agree with the majority that because the Board improperly allocated the burden of proof in determining that the discharges of Bowlds and Perkins were discriminatory, the case must be remanded for further consideration of this charge. But I believe that the majority has erred in its separate

holding that United Parcel Service (UPS) violated section 8(a)(1) of the Act by its overly broad rule against the distribution of union literature. The Company has raised an important statute of limitations challenge to the Board's finding of this unfair labor practice, and I think this challenge also warrants further consideration on remand.

The Board determined that UPS violated section 8(a)(1) of the Act entirely on the basis of the incident in which Supervisor Mouser told employee Perkins that "I'd rather you didn't" distribute literature on company property. The testimony indicated that this statement was made sometime in February or March 1979. Since the Administrative Law Judge had found a violation of section 8(a)(1) under a different theory, he made no finding as to precisely when Mouser's statement was made. Yet the date of the statement became a crucial item of information under the Board's theory of the case. Section 10(b) of the Act precludes the Board from issuing a complaint unless formal charges were filed with the Board within six months of the alleged unfair labor practice. 29 U.S.C. § 160(b). Because Perkins filed his charge on September 12, 1979, the General Counsel could only issue a complaint concerning events taking place after March 12, 1979. Thus, section 10(b) would require the Board to ascertain precisely when the Mouser-Perkins conversation occurred before the conversation could serve as the basis of an unfair labor practice finding. The Board did not consider this problem in making its decision.

The majority disposes of this statute of limitations defense on the ground that it was not adequately raised before the Board,

25. Note that in *Behring* we approved that part of the Board's *Wright Line* opinion which placed the initial burden on the General Counsel to establish a *prima facie* case of unlawful discrimination. We disagreed with the Board, however, that once a *prima facie* case is shown the burden of persuasion shifts to the employer. *Behring,* 675 F.2d at 90; *see Blackstone,* 685 F.2d at 105. We emphasized the importance of the procedural aspects of a discriminatory discharge case. We stated:

From a practical standpoint, it is unlikely that the decision in many cases will turn on whether the employer's burden is characterized as being one of persuasion or produc-

tion. Nevertheless, as the Board recognized in *Wright Line,* 251 N.L.R.B. at 1087, "[t]his distinction is a crucial one since the decision as to who bears this burden can be determinative." We think that fewer errors will result if the distinction is properly observed. *Behring,* 675 F.2d at 90 (footnote omitted).

The Supreme Court has recently granted certiorari in *NLRB v. Transp. Management Corp.,* 674 F.2d 130 (1st Cir.) (per curiam), *cert. granted,* ── U.S. ──, 103 S.Ct. 372, 74 L.Ed.2d 506 (1982), to resolve the conflict between the Board and various courts of appeals on the burden of proof issue.

and that therefore this court may not consider it now. Under section 10(e) of the Act, 29 U.S.C. § 160(e), the court of appeals may not consider any argument that an employer failed to raise before the Board unless "extraordinary circumstances" exist. *See Woelke & Romero Framing, Inc. v. NLRB,* 456 U.S. 645, 665, 102 S.Ct. 2071, 2083, 72 L.Ed.2d 398 (1982). The Company argues that it adequately raised the issue before the Board because in its brief to the Board filed in support of its exceptions to the Regional Director's report, it clearly stated that "the section 10(b) limitations preclude any ... finding" that Mouser's statement violated the Act. The majority does not consider this adequate to raise the defense because the argument was not made in the Company's formal exceptions but only in its supporting brief. *See* maj. op., *supra,* at 979 n. 16.

To my mind, this is an unduly technical and unreasonable disposition of this issue. The majority refers to regulations of the Board requiring parties to include in their exceptions all matters that are to be argued before the Board, and limiting the brief to matters within the scope of the exceptions. *See* 29 C.F.R. § 102.46. It is undeniable, however, that the Board was informed of the statute of limitations issue.

We have previously held that a technical failure to comply with the Board's procedural rules governing objections will not bar an employer from making his argument to the court of appeals so long as the Board was "adequately appraised" of the employer's position. *NLRB v. Capital Bakers, Inc.,*

351 F.2d 45, 48 (3d Cir.1965). *See also NLRB v. Blake Construction Co.,* 663 F.2d 272, 283–84 (D.C.Cir.1981) ("We do not think section 10(e) requires such a triumph of technical pleading over fundamental fairness."). Especially in the instant case, where the Board itself saw fit to reformulate the section 8(a)(1) issue at the last minute,[1] I am very reluctant to adopt the excessively technical approach to section 10(e) that the majority does. As we recently have observed, "The purpose of § 10(e) is to ensure against piecemeal appeals to the courts by requiring that the parties first give the Board an opportunity to rule upon all material issues in a case." *NLRB v. Cardox Division of Chemetron Corp.,* 699 F.2d 148, 153 n. 10 (3d Cir.1983). In the instant case, the Board had such an opportunity. I cannot conceive of any purpose that would be served by foreclosing the Company from arguing its statute of limitations defense on the ground that, though it made the argument to the Board in very explicit terms, it did so on the wrong page.

I therefore think that the statute of limitations issue was adequately raised below and may be considered by the court on appeal.[2] The record suggests that this defense quite possibly has merit, since Mouser's statement may have been made in February or the first few days of March. Accordingly, upon remand of the case, the Board should also be directed to ascertain whether Mouser's statement took place within the statutory six-month period of section 10(b).[3] I therefore dissent on this statute of limitations issue.

1. The Administrative Law Judge found a continuing violation of section 8(a)(1) arising out of a posted work rule pertaining to distribution of literature in the plant, and apparently viewed Mouser's statement as simply one instance of the implementation of this work rule. The Board, however, relied solely on Mouser's statement to Perkins as the basis for the unfair labor practice finding.

2. The Company maintains that, assuming it did not adequately meet the requirement of section 10(e) that the statute of limitations issue be specifically raised before the Board, it should be excused for not having done so, because it was only when the Board reformulated the position of the ALJ that the statute of limitations issue became crucial. This argument might

have had some merit, were it not for the Supreme Court's recent decision in *Woelke & Romero Framing, Inc. v. NLRB,* 456 U.S. 645, 665, 102 S.Ct. 2071, 2083, 72 L.Ed.2d 398 (1982), where the Court suggested that the section 10(e) bar applies even where an issue is injected into the proceedings by the Board's decision, since the opposing party still has the option of filing a motion for reconsideration with the Board. But, as noted above, I believe that the Company adequately urged its statute of limitations objection before the Board.

3. Since the case is being remanded to the Board on the discriminatory discharge issue, no further delay or inconvenience to the parties would be caused by remanding on the 8(a)(1) issue as well.