**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**WOLFF & MUNIER, INC., Respondent.**

**No. 83–3077.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) March 1, 1984.

Decided Oct. 30, 1984.

---

Sloviter, Circuit Judge, filed a dissenting opinion.

William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Allison W. Brown, Jr., Christopher W. Young, Washington, D.C., for petitioner.

Whitman & Ransom, New York City, for respondent; James Morris, John Pateracki, Louis DeJoie, New York City, of counsel.

Before ADAMS and SLOVITER, Circuit Judges, and O'NEILL, District Judge.[*]

**OPINION OF THE COURT**

O'NEILL, District Judge.

The National Labor Relations Board has filed a petition, pursuant to 29 U.S.C. § 160(e), seeking enforcement of its order of June 21, 1982 against respondent Wolff & Munier, Inc. The Board found respondent in violation of sections 8(a)(1) and (3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1) and (3), because it discharged Ralph Campione, Robert Campione and Walter Dowd and because it previously had threatened to discharge Robert Campione and Dowd, all as a result of the three men's union activities. The Board ordered respondent to cease and desist from its unfair labor practices and to reinstate the Campiones and Dowd with back pay.

Respondent contends, *inter alia*, that the Board's order should not be enforced

[*] Honorable Thomas N. O'Neill, Jr., United States District Court for the Eastern District of Pennsylvania, sitting by designation.

because the Board failed to defer to the decision of a Joint Conference Committee that respondent had the right to terminate the Campiones and Dowd. The Committee is an arbitral body created by the collective bargaining agreement between Local Union No. 24 of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry, AFL–CIO, of which the Campiones and Dowd were members, and the Mechanical Contractors Association of New Jersey, Inc., of which respondent was a member.

We hold that the reason articulated by the Board for its refusal to defer does not justify the refusal and remand for further proceedings.

### I.

Respondent operates the Passaic Valley Sewage Treatment Plant at Newark, New Jersey. Among the workers employed by respondent at this jobsite were approximately thirty plumbers, all members of Local 24, who had been referred through the Union's hiring hall to Emil LeDoux, respondent's superintendent.

Ralph Campione was hired in March of 1978 as a journeyman plumber, was made a foreman in the summer of the same year and in June or July, 1979, was promoted to general foreman. Walter Dowd was first hired in August or September of 1979 as a journeyman plumber and was promoted to foreman in June of 1980. Robert Campione was hired as a foreman in May of 1979. As previously noted, the three men were members of Local 24.[1]

On August 28, 1980, Local Union 24 held its regular monthly meeting. At that meeting the Campiones and Dowd complained to the Union leadership that work duties normally performed by plumbers at the Passaic Valley jobsite were being performed by members of other craft unions; further, they complained that officials of Local 24 were not doing their job in seeing

to it that such plumbing work was performed by members of Local 24.

Soon after the August 28 meeting, LeDoux told Ralph Campione that he was fired. LeDoux explained that he was "sick and tired of the agents coming down on him," and that he had repeatedly warned Campione to stay away from union politics. Later that day, LeDoux told Robert Campione and Walter Dowd that he would not fire them if they stayed away from "political involvements," but if they persisted in union politics he had no other choice but to let them go. Still later that day, after hearing from another foreman that they were quitting, Dowd and Robert Campione visited LeDoux and told him they were not planning to quit. LeDoux replied, "I know you're not quitting, I'm letting you go."

Thereafter, the three discharged men filed a grievance with the Union, which concluded that they had a legitimate grievance and arranged for a hearing by the Joint Conference Committee. The Committee was created by the collective bargaining agreement and has ten members, five from the contractors' association and five who are officers of the Union. One of its responsibilities is to supervise and control the operation of the job referral system established by the agreement.[2] Another is to adjudicate claims of the employer for financial loss due to negligent or international acts of employees.[3]

Perhaps the principal function of the Committee, and at any rate the one pertinent to disposition of the present matter, is to adjudicate any and all questions or disputes arising between the parties to the agreement. The agreement states that the Committee's decision is to be binding on the parties and their respective members:

Section 29

JOINT CONFERENCE COMMITTEE

29.1 The purpose of this agreement is to provide a method by which any and all

---

1. Superintendent LeDoux also was a union member, but of a different local, Plumber's Local No. 2.

2. A. 302–303.

3. A. 306.

disputes arising between the parties hereto may be peacefully disposed of, and thereby to prevent strikes and lockouts, to provide for the encouragement of training of new workers in the trade, and to do all things directed towards the establishment and maintenance of high professional standards, the combating of unfair practices and the elimination of unsatisfactory conditions in the trade, without intervention of any other trades. 29.2 For the purpose of carrying out the provisions of this section, the Association and the Union agree that upon any question or dispute arising between the parties hereto, or any of their respective members, no independent action will be taken by either party, but the whole question shall be certified in writing to a Joint Conference Committee as hereinafter provided for, whose decision shall be binding on the parties hereto, and their respective members. The Committee shall meet and act within 24 hours of the call of either the Association or the Union. In the event of a deadlock, the procedure for arbitration set forth in Section 8.2 shall be applicable.[4]

Pursuant to this provision, and after hearing, the Joint Committee issued the following decision:

As a result of a request from Plumbers Local Union No. 24 Business Manager James McManus a meeting of the above Joint Conference Committee was held on November 5th, 1980 at the office of the Mechanical Contractors Association in East Orange, N.J.

Mr. McManus requested the meeting in that three members of Local 24, Ralph Campione, Robert Campione, and Walter Dowd, believed they were unjustly dismissed at the Passaic Valley Sewage Treatment Plant by their employer, Wolff & Munier, Inc. on September 9, 1980. It should be noted that they had been employed by Wolff & Munier as foremen on the above project and that Ralph Campione had been general foreman. The Conference Committee met as requested and heard testimony from Messrs. Ralph Campione, Robert Campione, and Walter Dowd regarding their alleged dismissal and also heard testimony from Mr. Emil Ladeaux and Francis Chang, Superintendent and Project Manager respectively of Wolff & Munier at the Sewage Treatment project.

At the conclusion of the presentation of the above testimony the committee reviewed and discussed the available evidence and found that there was no substantiation of the charge by the Campiones and Dowd that they were unjustly dismissed. The committee decided that there should be no restriction on an employer terminating a foreman in that it had been the employer's sole decision to employ the person in question as a foreman. In other words, if he had the right to appoint him he had the right to terminate him. The committee further believes that under the Local 24—MCA current collective bargaining agreement there is no restriction on the right to terminate any employee whether foreman or not under conditions similar to those occurring in this case.

Thereafter, upon a charge filed by Robert Campione,[5] the Board issued a Complaint. Hearing was held before an Administrative Law Judge, whose decision was affirmed by the Board. The Board's decision contained additional comments and rulings of its own.[6] Both the ALJ and the Board held that respondent had violated Section 8(a)(1) and (3) of the Act; both declined to defer to the decision of the Joint Conference Committee.[7]

## II.

Section 203(d) of the Act, 29 U.S.C. § 173(d), expresses a "national policy in favor of the private resolution of

4. A. 306–307.

5. It is not clear whether Ralph Campione also filed a charge, A–1, A–248.

6. Footnotes 1–4, A–290–291.

7. A–259–260, A–290–291.

labor disputes through consensual arbitration." [8] Deferral to the decision of an arbitrator is appropriate where the arbitrator has decided the questions necessary to resolution of the statutory inquiry [9] and "(1) the proceedings have been fair and regular; (2) the parties agreed to be bound; and (3) the decision is not 'clearly repugnant' to the purposes and policies of the Act." [10] A refusal of the Board to defer will be overturned only if it has abused its discretion.[11]

The Board held and now argues that deferral was not required in the present case because there was no evidence that the Joint Conference Committee considered the unfair labor practice issue, that is, the issue whether termination of the three men was due to an anti-union motivation on the part of the Company, which, the Board says, is the crux of a charge under Section 8(a)(3) of the Act.

The Committee, however, considered another issue and that was whether the status of the three men as foremen conferred upon the Company the power to terminate them:

> The committee decided that there should be no restriction on an employer terminating a foreman in that it had been the employer's sole decision to employ the person in question as a foreman. In other words, if he had the right to appoint him he had the right to terminate him.

It is evident from this language that the Committee decided that the Company can hire and fire foremen at will. While the Committee did not use the word "supervisor," one of the statutory definitions of that word is "any individual having authority, in the interest of the employer ... responsibly to direct" other employees, 29 U.S.C. § 152(11). The collective bargaining agreement provides that the employer has the right to designate the foreman and that the foreman's duty is to supervise the journeymen.[12] Given this provision, and the language used by the Committee, the Committee may well have decided that the Campiones and Dowd were supervisors. In that event, the three men were not entitled to the protection of the Act. If the Committee did so conclude, it was entitled to end its inquiry at that point and did not need to determine whether employees protected by the Act had been discharged for union activity.

■ In *N.L.R.B. v. A. Duie Pyle, Inc.,* 730 F.2d 119 (3d Cir.1984), this Court reaffirmed the well-established principle that an error urged by respondent may not be considered by this Court if respondent failed to raise the issue before the Board. This principle is not applicable to the present matter: the ALJ considered whether he should defer to the decision of the Joint Conference Committee and declined to do so (A–259–260); respondent presented the issue to the Board (A–271–272), which also declined to defer (A–290–291). Indeed, the Board does not even argue that the Company has waived its right to raise this issue, namely, whether the Board should have deferred to the Committee. The Board addressed this issue on its merits and argues that it "reasonably determined that it would be inappropriate to defer" (Brief, p. 22) because the Committee did not consider the unfair labor practice charge (Brief, pp. 22–24).[13] The Board ap-

---

**8.** *N.L.R.B. v. Pincus Bros. Inc.—Maxwell,* 620 F.2d 367, 372 (3d Cir.1980). The section provides, in part: "Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement."

**9.** *NLRB v. General Warehouse,* 643 F.2d 965, 969 (3d Cir.1981); *see also Hammermill Paper Co. v. NLRB,* 658 F.2d 155, 160 (3d Cir.1981); *cert. denied,* 460 U.S. 1080, 103 S.Ct. 1767, 76 L.Ed.2d 341 (1983).

**10.** *N.L.R.B. v. Pincus Bros. Inc.—Maxwell, supra,* 620 F.2d at 371–372, restating their standard enunciated by the Board itself in *Spielberg Manufacturing Co.,* 112 N.L.R.B. 1080 (1955).

**11.** *Id.* at 372.

**12.** A–303.

**13.** What the Board does assert, properly, is that respondent has waived its right to contend that the Board itself should have determined that the Campiones and Dowd were supervisors as de-

pears not to have determined whether the Committee had decided that the Campiones and Dowd were not covered by the Act. If the Committee did so decide, it would be an abuse of discretion for the Board to refuse to defer unless it found that the Committee's conclusion was deficient in one of the four ways enunciated in *Spielberg Mfg. Co.*, 112 N.L.R.B. 1080 (1955).[14] A principal question before the court is whether the Committee decided that the Campiones and Dowd were supervisors within the meaning of the Act; if the Committee did so decide, the Board's refusal to defer was an abuse of discretion.

As the dissent itself observed, the term "foreman" does not necessarily mean "supervisor" as that term is defined in the Act. There is some evidence that the Board refused to defer to the Committee after consciously finding that the Committee's statement that the Campiones and Dowd were foremen who could be fired at will did not constitute a holding on the statutory question. In a footnote, Member Hunter states that he could not support deferral based on an "ambiguously worded Joint Conference Committee award ..." when the employees were discharged for engaging in union activities, which are at the heart of the Act's protection.[15]

This may be taken to be an explanation that the Board did not find the Committee's award to be a resolution of the statutory inquiry into the supervisory status of foreman, especially when centrally protected activities were threatened. The footnote is ambiguous, however, and we cannot say with confidence that the Board found that the Committee did not consider that statutory issue. The footnote could also mean that that the Board believed that the Committee's findings on the power of the employer, even if they resolved the statutory inquiry, did so in a way clearly repugnant to the policies of the Act. Since the Campiones and Dowd were discharged for union activities, the Board may have felt that a decision placing their jobs outside of the protection of the Act contravenes the purposes of the Act.

■ It is clear that the issue of deferral was raised before the Board, and it is clear that the Board refused to defer to the Committee. What is not clear is why the Board chose not to defer to a finding that the employees were foremen and thus could be discharged at will. The Board should be allowed to determine whether the Committee's findings on the power of the employer over these foremen were a resolution of the statutory inquiry and, if they were, whether those findings were clearly repugnant to the policies and purposes of the Act.

For the reasons stated above, this matter will be remanded to the National Labor Relations Board for further proceedings consistent with this opinion.

---

fined in Section 2(11), 29 U.S.C. § 152(11), and thus excluded from the protections of the Act (Brief, pp. 10–12). See *Beasley v. Food Fair of North Carolina, Inc.*, 416 U.S. 653, 94 S.Ct. 2023, 40 L.Ed.2d 443 (1974). The answer to the petition for enforcement concedes that this issue was not raised before the Board. Accordingly, absent extraordinary circumstances not here presented, judicial review of this question is barred by section 10(e) of the Act, 29 U.S.C. § 160(e). If the Board decided the issue (see A–291, fn. 2), review is nevertheless unavailable because no petition for reconsideration was filed. *Woelke & Romero Framing, Inc. v. N.L.R.B.*, 456 U.S. 645, 665–666, 102 S.Ct. 2071, 2082–2083, 72 L.Ed.2d 398 (1982).

**14.** See note 10, *supra*, and accompanying text. There is no question that the parties agreed to be bound by the Committee's decision. On the other hand, the Board could hold that the Committee's proceedings were not fair and regular, or that the Committee did not in fact consider the statutory question of the "supervisor" status of Campione and Dowd, or, if the Committee did so find, that that determination was so clearly erroneous as to be repugnant to the Act. The Board has, in the past, refused to defer to an arbitral award when management and the union have a common interest in seeing an employee discharged. This Court has recognized the propriety of such a decision, see *Herman Brothers, Inc. v. NLRB*, 658 F.2d 201, 207 (3d Cir.1981). Although the Board in no way indicated that it believed the proceedings of the Committee to have been tainted by union-management collaboration, the facts of this case might suggest that possibility.

**15.** (262 N.L.R.B. No. 45, fn. 1).

SLOVITER, Circuit Judge, dissenting.

## I.

The opinion of the majority has found yet another way to undercut the NLRB's role as the arbiter of national labor policy. The ebb and flow of the jurisprudence of this court in that regard has already been chronicled. *See NLRB v. K & K Gourmet Meats, Inc.*, 640 F.2d 460, 470 (3d Cir.1981) (Gibbons, J., dissenting). What is remarkable is that in the majority's unwillingness to enforce a Board order against an employer, which even it cannot find unsupported by substantial evidence, it has chosen a route that contravenes an explicit statutory provision limiting our review, disregards recent decisions of this court, twists the record in this case, and ignores well-established jurisdictional and prudential limits to our review.

## II.

### A.

A review of the facts and administrative proceedings relating to this matter is essential to an understanding of the remarkable nature of the disposition by the majority.

The testimony, as credited by the Administrative Law Judge, established that Robert Campione, Ralph Campione, and Walter Dowd complained at a regular monthly Union meeting that the Union leaders were not fulfilling their duty to assure that plumbing jobs at the Passaic Valley job site were performed by members of the Union. They argued at the meeting that these jobs were being performed by members of other craft unions. App. at 251a. Within two weeks, all three men were discharged. The testimony linking the employer's termination of these three employees to their criticism of the Union leaders at the Union meeting and to their involvement in Union politics was credited by the ALJ. App. at 251-52a, 253a-54a.

The employees filed a grievance which was referred to the Joint Conference Committee, consisting of five members of the contractor's association and five officers of the Union. That meeting lasted about one or one and a half hours. At that meeting, James McManus, the Union's business manager, "jumped up" when they were three-quarters of the way through the meeting and said, " 'These fellows also have a complaint with the National Labor Relations Board,' and a hush went over the floor and that was about it, they cut us short." App. at 107a (testimony of Ralph Campione).[1] The full text of the Joint Committee's decision was:

> At the conclusion of the presentation of the above testimony the committee reviewed and discussed the available evidence and found that there was no substantiation of the charge by the Campiones and Dowd that they were unjustly dismissed. The committee decided that there should be no restriction on an employer terminating a foreman in that it had been the employer's sole decision to employ the person in question as a foreman. In other words, if he had the right to appoint him he had the right to terminate him. The committee further believes that under the Local 24—MCA current collective bargaining agreement there is no restriction on the right to terminate any employee whether foreman or not under conditions similar to those occurring in this case.

App. at 309a–10a.

As stated by McManus, a charge had indeed been filed with the Board, and the General Counsel filed a complaint. In that complaint, the General Counsel alleged that the three employees were discharged for engaging in activities protected under the National Labor Relations Act, and that such discharge and the conduct of the employer in threatening to discharge Robert Campione and Walter Dowd if they engaged in union activities constituted unfair

---

1. Mr. LeDoux, the employer's supervisor on the Passaic Valley Project, did not contest that this happened, but merely said he "couldn't swear" to it. App. at 134a. The ALJ credited Campione's recollection. *Id.* at 135a.

labor practices within the meaning of sections 8(a)(1) and (3), 29 U.S.C. §§ 158(a)(1), (a)(3) (1982). The complaint, of course, alleged that the three men were employees and subject to the Act's protection. App. at 3a.

The employer in its answer to the Board's complaint merely denied the allegations generally and did not raise either a claim that the Act was inapplicable to the three employees or a claim that deference should be accorded to a grievance resolution by the Joint Conference Committee. The case proceeded to hearing before the ALJ. The ALJ heard extensive, and often conflicting, testimony. One must keep in mind that the three employees were contending that their discharges stemmed from their criticism of the Union. Only when the ALJ inquired during the course of the hearing about the absence of a Union representative did the employer's attorney mention, for the first time, that the discharges had been the subject of a Union grievance which had been resolved in favor of the employer. The employer's attorney did not, even then, suggest that deference to the Committee's decision was due. App. at 20a–22a.

Later in the hearing, and out of what may have been an overabundance of caution, the Board's counsel embarked on an attempt to rebut a possible contention by the employer that the employees, denominated as foremen, were not protected by the Act. The ALJ accurately noted that that was not an issue in the case, and thus questioned the purpose of this inquiry. The Board's counsel responded that the firing of these Union members, even though they were denominated as foremen, makes out a section 8(a)(3) violation. The Administrative Law Judge interrupted, stating:

JUDGE TRUNKES: Is that being denied by you? . [referring to the employer]. That's not an issue. Don't make it an issue or he [employer] will start contesting it and we will be here all week.

App. at 55a–56a. The employer's attorney did not challenge that ruling and did not suggest that because the men were foremen, they were outside protection of the Act. This is the only colloquy relevant to the status of the employees.[2]

Later at the hearing, the employer sought to introduce the formal decision of the Joint Committee on the Union's grievance. The ALJ found that there was nothing in the decision of the Joint Committee to show that the unfair labor practice charges had been considered by the Committee. App. at 131a–33a. The ALJ, recounting the state of the record on this point, said, "Apparently, once McManus said they filed a charge with the NLRB, that was the end of that. As far as they were concerned, let them go to the NLRB and handle it from there, which is what we are doing." App. at 134a. The ALJ continued addressing the employer's attorney on this point, stating that he assumed the employer was asked what happened during the investigation by the Regional Director. The ALJ stated, "There was no discussion that there was an arbitration proceeding which prevented us from holding the hearing." *Id.* He stated further,

You have a decision that says that the employer has the right to hire and discharge the employees. I don't know what was said at this meeting [of the Joint Conference Committee] but from what the employees testified to, nothing was brought up such as what we have been hearing for the past three hours at this hearing.

App. at 135a. The *employer's attorney.* Mr. Vercollone, *agreed,* saying:

MR. VERCOLLONE: I get the impression there was nothing decided at this hearing concerning this particular issue [unfair labor practice charges].

*Id.*

When Vercollone was asked directly if he sought to introduce the Report to show

---

**2.** Therefore, it is a patent misstatement of the record for the employer to cite this colloquy in its brief before us as raising the "supervisor issue" at the administrative hearing, and to state

that Judge Trunkes "discouraged the issue from being pursued." Brief for Respondent-Appellant at 16.

that the ALJ was bound by it, Vercollone replied, "No, that is not my purpose. If I thought you were [bound by the decision], I would have brought it up a long time ago." App. at 135a. Nonetheless, the ALJ admitted the Committee's Report into evidence so that the employer could use it to argue credibility. The Board objected on the ground of relevancy, and the ALJ stated "[The employer] is not bringing it in simply making me bound by that decision." App. at 137a. Mr. Vercollone, the employer's attorney, responded, *"Certainly not." Id.* Patently, therefore, there was no suggestion before the ALJ that the Committee's report was entitled to deference *on any issue.*

The ALJ, in an exhaustive analysis and discussion of the merits of the charge contained in his 15-page decision, concluded that the termination of the three employees violated sections 8(a)(3) and (1) because it occurred as a result of their protected concerted and union activities, and further that the employer violated section 8(a)(1) by threatening to discharge Robert Campione and Dowd should they engage in protected concerted and union activity. App. at 248a–62a. On the effect of the arbitration, the ALJ concluded, "At no time was the matter of unfair labor practices discussed between the parties," App. at 259a, and that deference to an arbitral decision under the doctrine of *Spielberg Manufacturing Co.,* 112 N.L.R.B. 1080 (1955), should not be accorded because "there is not a scintilla of evidence that the Joint Council considered, in any manner, a possible unfair labor practice, as charged herein." App. at 260a.

The employer excepted to the Board from the decision of the ALJ on three grounds: (1) that the ALJ's conclusion that the employer discriminated against the three employees because of their activities on behalf of the Union was not in accord with either law or fact; (2) that the conclusion that the employer threatened the employees with loss of employment should they engage in protected activities was not in accord with either law or fact; and (3) that the procedure by which the ALJ conducted the hearing was clear evidence that he was less than an impartial trier of fact and was prejudiced in favor of the employees.

Significantly, none of the three exceptions related either to the applicability of the Act to the employees or to the need to defer to the decision of the Joint Committee. However, in its brief in support of those exceptions, the employer argued that "the findings of that Joint Committee ... contained in Respondent's Exhibit 3 ... [which] state basically that there is no substantion [sic] to the charges of Ralph Campione, Robert Campione or Walter Dowd that they were unjustly dismissed" should have been binding on the ALJ. App. at 271a–72a. Even if we consider this to be a proper urging of an objection, notwithstanding its omission from the Exceptions, it constitutes, at most, an objection seeking deference to the Joint Committee's findings regarding the merits of the dismissal. The majority does not cite to any exception or argument to the Board that it should defer to any finding by the Joint Committee relating to the applicability of the Act to the discharged employees *because none exists.* No such finding could have been made by the Joint Committee because it never considered the applicability of the Act to those individuals. The Committee's decision was explicitly limited to its construction of "the Local 24—MCA current collective bargaining agreement." App. at 310a.

The Board affirmed the rulings, findings, and conclusions of the ALJ, and adopted his recommended order. In a footnote, the Board agreed with the ALJ that "it [was] inappropriate, in the circumstances presented here, to defer to the decision of the Joint Conference Committee disposing of grievances filed over the discharge that gave rise to the instant 8(a)(3) and (1) allegations." 262 N.L.R.B. No. 45 at 1 n. 1 (1982), App. at 290a. The footnote continued that although Board Member Hunter favored the principles of deferral established in *Spielberg Manufacturing Company,* 112 N.L.R.B. 1080 (1955), "he finds that the instant record does not justify

deferring to the grievance award in this case." After noting the "ambiguously worded" statement in the Joint Committee's award that there should be "no restriction" on the employer's right to discharge these employees, the footnote continued, "Clearly, the [Act] protects the right of employees to engage in union activities, and Member Hunter will not defer to a grievance award that indicates on its face that statutory protections have neither been considered nor have any application in these circumstances." *Id.*

In another footnote, the Board stated that "the employees who the Administrative Law Judge found were threatened and discharged in violation of sec. 8(a)(1) and (3) are classified as foremen and, in one case, a general foreman." The Board then continued, *"No contention has been made, and the record evidence does not establish, that these individuals are supervisors within the meaning of Sec. 2(11) of the Act." Id.* at n. 2 (emphasis added).

### B.

Before us are the Board's application for enforcement of its order and the employer's cross-application for dismissal of the Board's order in its entirety. The employer presented four questions to this court: (1) whether the decision and order of the Board was erroneous "because it failed to fully address the issue whether—or find that—the subject employees were 'supervisors' as defined by the [NLRA]," (2) whether the Board's decision and order was erroneous "because it failed to defer to the unanimous Decision of the Joint Conference Committee ... which held that the subject employees were not illegally or wrongfully terminated," (3) whether the Board erred in failing to find the activities for which the employees were terminated were not protected activities under the Act, and (4) whether the order granting reinstatement should be denied "because neither the employees' former positions nor substantially equivalent positions are in existence." Brief for Respondent-Appellant at 2–3.

In its further written argument on the "supervisor" issue, the employer argued that the record evidence showed that the three men were "supervisors" and exempt from the Act, acknowledged the issue was not raised before the Board by a specific objection, and claimed its failure to do so was excused by "extraordinary circumstances", Brief for Respondent-Appellant at 16–17. Significantly, on the deference issue, the employer argued only that the Board should have deferred to the merits of the Committee's decision, and not that the Joint Conference Committee made a decision with regard to the "supervisor" status of the employees to which the Board should have deferred.

In the face of this record, the majority treats as the dispositive issue before us whether the Committee decided that the employees were supervisors within the meaning of the Act and remands to "allow" the Board "to determine whether the Committee's findings on the power of the employer over these foremen were a resolution of the statutory inquiry, ...."

### III.

#### A.

There are a number of grounds on which the majority opinion and disposition are flawed. I will discuss only the most salient. Chief among these is that the two central issues, the nonapplicability of the Act to these employees and deference to the Joint Conference Committee which may have decided that the employees were not covered by the Act, cannot be considered by this court because they were waived by the employer.

Congress has by statute established a strict and obligatory prerequisite to judicial administrative review in labor cases. In section 10(e) of the National Labor Relations Act (NLRA), Congress has stated:

No objection that has not been urged before the Board, its member, agent, or agency, *shall be considered by the court,* unless the failure or neglect to

urge such objection shall be excused because of extraordinary circumstances. 29 U.S.C. § 160(e) (1982) (emphasis added). Section 10(e), which applies to court review of petitions for enforcement by the Board, is also incorporated in section 10(f), applicable to petitions for review of the Board's order.

The Supreme Court has clearly stated that application of section 10(e) is mandatory. The failure to object is not one that we have discretion to overlook. *NLRB v. Ochoa Fertilizer Corp.*, 368 U.S. 318, 322, 82 S.Ct. 344, 347, 7 L.Ed.2d 312 (1961). As the Supreme Court recently reaffirmed in *Woelke & Romero Framing, Inc. v. NLRB*, 456 U.S. 645, 665–66, 102 S.Ct. 2071, 2082–83, 72 L.Ed.2d 398 (1982), when an issue is not raised during the proceedings before the Board, the Court of Appeals is without jurisdiction to consider that question.

This court has twice this year shown unusual unanimity in labor cases in strictly adhering to the requirement that an objection must be "urged before the Board" before it can be considered on review. Thus, in *NLRB v. A. Duie Pyle, Inc.*, 730 F.2d 119, 123 (3d Cir.1984), the employer contended on appeal before us that the Board should have deferred to a settlement agreement that it had reached with the employee and that the ALJ refused to approve. Despite the public interest in private, amicable resolution of labor disputes, we "quickly resolve[d]" that contention, stating, "We may not consider whether the ALJ erred in this instance because the company failed to raise the settlement issue before the Board." *Id.* at 124. Again, in *Oldwick Materials, Inc. v. NLRB*, 732 F.2d 339 (3d Cir.1984), Judge Higginbotham explored sections 10(e) and (f), and their foreclosure of any judicial consideration of objections not raised before the Board. In concluding that we lacked jurisdiction to consider the employer's arguments on review because it had not raised these before the Board, he referred to this court's "long adher[ence] to the jurisdictional principles" encompassed in these sections as interpreted by the Supreme Court and us. *Id.* at 342.

Indeed, the majority opinion concedes, as does the employer, that it failed to argue before the Board that the individuals were supervisors and hence unprotected by the NLRA. The Board's reference to a point not urged before it "does not excuse petitioner from its statutory obligation under § 10(e) to file exceptions presenting and preserving its argument to the Board." *Oldwick Materials, Inc. v. NLRB*, 732 F.2d at 343 n. 1. Since the majority also finds that there are no "extraordinary circumstances" within the meaning of section 10(e) of the Act, this should dispose of the matter before us.

However, by a deft manipulation, the majority concludes that although the issue of whether the employees were "supervisors" (and thereby outside the Act) was waived, because not raised by the employer until its brief before us, the Board would nonetheless be obliged to defer to the Joint Committee's "finding" that "the employees were foremen and thus could be discharged at will" if these "findings ... were a resolution of the statutory inquiry." The majority concludes that "if the Committee did [decide that the employees were supervisors within the meaning of the Act] the Board's refusal to defer was an abuse of discretion."

In the first place, there is not a scintilla of evidence that the Committee even considered, much less decided, this issue. The Joint Committee never used the term "supervisors" and never discussed the applicability of the Act to the individuals. There is no justification on the record for the majority to state "the Committee may well have decided that the Campiones and Dowd were supervisors," a statement fabricated out of the Emperor's invisible clothing.

In the second place, the majority seems to be proceeding on the assumption that foremen are automatically supervisors, and outside the Act's protection. That assumption is simply wrong as a matter of law. There is a long line of cases to the effect that foremen are not automatically supervi-

sors. *See, e.g., NLRB v. Berger Transfer & Storage Co.*, 678 F.2d 679, 688 (7th Cir. 1982) ("warehouse foreman" not supervisor); *Laborers & Hod Carriers Local No. 341 v. NLRB*, 564 F.2d 834, 837–39 (9th Cir.1977) ("labor foreman" was not supervisor); *Park Drug Co.*, 122 N.L.R.B. 878, 879–80 (1959) ("working foremen" not supervisors); *Sebastopol Cooperative Cannery*, 111 N.L.R.B. 530, 531 (1955) ("day shift label foreman" not supervisor); *In re Emerson Television Service Corp.*, 88 N.L.R.B. 55, 56 (1950) (foreman not supervisor).

Finally, the majority makes a mockery of sections 10(e) and (f). The employer never argued before the Board that it should defer to a Joint Committee finding that the employees were supervisors and hence exempt, and has not so argued before us. Of course, "the Board does not argue that the Company has waived its right to raise this issue," as the majority states, because until the majority's decision, no one has even argued that the Joint Committee may have made such a decision. Thus, we are not free to consider it or decline to enforce the Board's order on this basis.

Moreover, the Board and this court have established that a party urging deference to an arbitral determination must raise this issue *before the ALJ*, stating the grounds for deference in the particular case. *See Herman Brothers, Inc. v. NLRB*, 658 F.2d 201, 205–06 (3d Cir.1981); *Wheeling-Pittsburgh Steel v. NLRB*, 618 F.2d 1009, 1015–16 (3d Cir.1980), *cert. denied*, 449 U.S. 1078, 101 S.Ct. 859, 66 L.Ed.2d 801 (1981); *Food Fair Stores, Inc. v. NLRB*, 491 F.2d 388 (3d Cir.1974). This rule gives the Board the opportunity to decide whether to defer to arbitration "after hearing all the facts relevant to the appropriateness of deferral" and ensures that deferral is indeed desired by a party. *Wheeling-Pittsburgh Steel*, 618 F.2d at 1015. The record in this case demonstrates without equivocation that the employer waived any claim for deference before the ALJ and never stated that deference was appropriate as to supervisory status.

### B.

There is yet another, equally compelling reason for this court not to reach the issue deemed dispositive by the majority. As is set forth in Part II. B., *supra*, the employer not only failed to argue to the Board that the Joint Conference Committee made a decision as to the applicability of the NLRA to these three employees, but it failed to so argue in its brief to this court. This court has followed the established principle that an appellate court should not consider issues that have not been raised before it by the parties. *See Battle v. Pennsylvania*, 629 F.2d 269, 271 n. 1 (3d Cir.1980), *cert. denied*, 452 U.S. 968, 101 S.Ct. 3123, 69 L.Ed.2d 981 (1981); *Brown & Sielaff*, 474 F.2d 826, 828 (3d Cir.1973); Fed.R.App.P. 28(a) (appellant's brief shall state issues presented for review); 9 J. Moore, B. Wald & J. Lucas, *Moore's Federal Practice* ¶ 228.02[2.÷1] (2d ed. 1983).

### C.

Even more distressing than the majority's rush to meet an issue not properly before us is its novel suggestion that the Board would be required to defer to an arbitrator's construction of the scope of the NLRA. No authority is cited by the majority, nor do I know of any, for this proposition.

Reference to arbitration arises in two situations. One is when a court with jurisdiction under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, is asked to decide a dispute arising under a collective bargaining contract, and the other is when the Board's jurisdiction to prevent and remedy unfair labor practices is invoked. The rationale for deferring to arbitration in § 301 suits is to permit the parties to arbitrate a particular issue before persons of their choosing who are expert in the law of the shop. *See Steelworkers v. American Manufacturing Co.*, 363 U.S. 564, 567–69, 80 S.Ct. 1343, 1346–47, 4 L.Ed.2d 1403 (1960); *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960), and *Steelworkers v. Enter-*

prise Wheel & Car Corp., 363 U.S. 593, 596–97, 80 S.Ct. 1358, 1360–61, 4 L.Ed.2d 1424 (1960). If the parties are in dispute over an issue that is not subject to the grievance procedure, there need be no deferral to arbitration. Buffalo Forge Co. v. Steelworkers, 428 U.S. 397, 407, 96 S.Ct. 3141, 3147, 49 L.Ed.2d 1022 (1976). Thus, for example, it could be an arbitral issue whether the employees were foremen under a particular provision of a contract, but no case suggests that the parties could contract to agree to arbitrate the issue whether they were "supervisors" and hence not subject to the protection of the National Labor Relations Act.

In the second situation, i.e., when there is concurrent jurisdiction between the arbitrator by contract and the Board by statute over conduct that may both violate the contract and constitute an unfair labor practice, the Board has sought to accommodate both the policy underlying deference to arbitration and the policy underlying enactment of the NLRA. While the Board may, as a discretionary matter, choose to defer to arbitration, Section 10(a) of the Act, 29 U.S.C. § 160(a), makes it clear that the Board's power to prevent unfair labor practices is not affected by any private agreement. See NLRB v. Acme Industrial Co., 385 U.S. 432, 437, 87 S.Ct. 565, 568, 17 L.Ed.2d 495 (1967).

The Board first enunciated the circumstances in which it would choose to defer to arbitration in Spielberg Manufacturing Co., 112 N.L.R.B. 1080 (1955). See generally 1 The Developing Labor Law 957–91 (C. Morris 2d ed. 1983); R. Gorman, Basic Text on Labor Law 736–43 (1976). As this court has stated, the Board and this court will defer to an arbitrator's award "if: (1) the proceedings have been fair and regular; (2) the parties agreed to be bound; and (3) the decision was not 'clearly repugnant' to the purposes and policies of the Act. Spielberg, 112 N.L.R.B. at 1082." NLRB v. General Warehouse Corp., 643 F.2d 965, 968 (3d Cir.1981). An additional requirement for deference, enunciated in Raytheon Co., 140 N.L.R.B. 883 (1963), enforcement denied on other grounds, 326

F.2d 471 (1st Cir.1964), and approved by this court, is that the arbitrator reach and address the statutory questions and not resolve the issue solely on the contract. See Ciba-Geigy Pharmaceutical Division v. NLRB, 722 F.2d 1120, 1125–26 (3d Cir. 1983); United Parcel Service, Inc. v. NLRB, 706 F.2d 972, 980–81 (3d Cir.1983), vacated on other grounds, —— U.S. ——, 104 S.Ct. 419, 78 L.Ed.2d 355 (1984); NLRB v. General Warehouse Corp., 643 F.2d at 969–71. In a recent decision, the Board expounded on how it will determine whether "the arbitrator has adequately considered the facts which would constitute unfair labor practices." Olin Corp., 268 N.L.R.B. No. 86, 115 L.R.R.M. 1056, 1058 (1984).

There is no suggestion in that case, nor in any other case known to me, that would require the Board to defer to an arbitral decision that an employee is not within the scope of and protected by the Act. That threshold issue is central to the Board's general enforcement of the Act, and I would find it surprising were the Board to choose to defer to an arbitral determination of its own jurisdiction, which is, after all, precisely the effect of a finding that the employees are "supervisors" and hence not protected by the central provisions of the Act. Since I believe that even if the Committee had decided this statutory issue (which it is clear it did not), deference would be inappropriate and the majority's remand to the Board is both wasteful and silly. The Board can glean nothing more from the Committee's ambiguous one-page decision than we can from the record before us.